729 N.W.2d 396 (2007)
2007 WI 27
WISCONSIN DEPARTMENT OF REVENUE, Petitioner-Respondent-Petitioner,
v.
RIVER CITY REFUSE REMOVAL, INC., Respondent-Appellant.
No. 2004AP2468.
Supreme Court of Wisconsin.
Argued October 13, 2006.
Decided March 8, 2007.
*399 For the petitioner-respondent-petitioner the cause was argued by F. Thomas Creeron III, assistant attorney general, with whom on the briefs was Peggy A. Lautenschlager, attorney general.
For the respondent-appellant there was a brief by James R. Lowe, Barbara J. Janaszek, and Whyte Hirschboeck Dudek S.C., Milwaukee, and oral argument by Barbara J. Janaszek.
An amicus curiae brief was filed by Timothy G. Schally, Robert A. Schnur, and Michael Best & Friedrich L.L.P., Milwaukee, on behalf of the Milwaukee Symphony Orchestra, Inc., the Milwaukee Ballet Company, Inc., the Florentine Opera Company, Inc., the Skylight Opera Theatre Corp., and the United Performing Arts Fund, Inc.
¶ 1 JON P. WILCOX, J.
This is a review of a published court of appeals decision, Wisconsin Department of Revenue v. River City Refuse Removal, Inc., 2006 WI App 34, 289 Wis.2d 628, 712 N.W.2d 351. The court of appeals reversed the order of the Dane County Circuit Court, Gerald C. Nichol, Judge. The circuit court had reversed the Tax Appeals Commission (Commission) order and reinstated the assessment made by the Wisconsin Department of Revenue (Department).
¶ 2 Two issues are before this court. First, whether the fixed assets River City Refuse Removal, Inc. (River City) received through intercompany transfers with wholly-owned subsidiaries of its parent company are subject to use tax. We hold that they are not in this case because of the lack of the requisite "retailer" or "purchase" necessary for the transfers to fall within the scope of Wis. Stat. § 77.53(1)(1993-94).[1]
*400 ¶ 3 Second, whether River City satisfied its burden to show that its nonpayment of taxes was due to good cause and not due to neglect, pursuant to Wis. Stat. § 77.60(3). We hold that River City satisfied its burden. River City need not pay a negligence penalty. Accordingly, we affirm the court of appeals.

I. BACKGROUND
¶ 4 River City was a stock corporation organized under Wisconsin law, with its principal place of business in Eau Claire, Wisconsin.[2] It collected refuse and recyclables in Wisconsin for residences and businesses. River City held a Wisconsin consumer use tax permit, which is required for businesses that regularly acquire taxable items from sellers who do not collect tax.
¶ 5 River City was a wholly-owned subsidiary of Browning-Ferris Industries (BFI).[3] BFI was a publicly traded corporation, which had a number of other wholly-owned subsidiaries in a number of different states (BFI subsidiaries), including Browning-Ferris Industries of Wisconsin, Inc. (BFI-Wisconsin); Town & Country Waste, Inc.; Troy Area Landfill; BFI of Illinois; Woodlake Sanitary Service, Inc.; Browning-Ferris Industries of Minnesota, Inc.; and BFI Medical Waste Systems of Minnesota, Inc.
¶ 6 BFI and its subsidiaries were accrual basis taxpayers, meaning they recognized transactions at the time they occurred. Accounting entries for a liability or expense were made irrespective of the receipt or disbursement of a payment.
¶ 7 BFI maintained consolidated financial statements for all of its wholly-owned subsidiaries. Such a practice is in accordance with generally accepted accounting principles (GAAP). BFI also filed a consolidated federal income tax return for all of its wholly-owned subsidiaries. River City filed a separate Wisconsin tax return, pursuant to state law.[4]
¶ 8 BFI would assess the equipment needs of its subsidiaries and direct the transfer of assets accordingly. For accounting purposes, three sets of books would be involved: the sending subsidiary's, the receiving subsidiary's, and BFI's. The subsidiaries each had an intercompany payables account and an intercompany receivables account. The receiving subsidiary would add the net book value of assets to its intercompany payables account. Net book value would be arrived at by subtracting the accumulated depreciation previously taken by the sending subsidiary from the original purchase price. The sending subsidiary would subtract the same value from its intercompany receivables account. Subsidiaries did not exchange money for the intercompany transfers. BFI took responsibility for reconciling each subsidiary's receivables and payables in BFI's books, with the intercompany transfers netting zero on BFI's consolidated financial statement.
*401 ¶ 9 After the intercompany transfer, the receiving subsidiary would continue to depreciate the assets. The net book value would be used as the initial cost basis. Any gains over the initial cost basis would be reported as income if the assets were sold.
¶ 10 In BFI's Policy and Procedure Manual, BFI identified tax liability as a potentially adverse effect of intercompany transfers. The manual warned that "such transfers may inadvertently trigger foreign and U.S. tax consequences without careful study."
¶ 11 River City took part in intercompany transfers. When River City received fixed assets from other BFI subsidiaries, it would receive all rights to, and ownership of, the transferred assets. River City would retitle the assets in its name and recognize the transfers in its financial records. It paid no tax at the time of retitling. In recognizing the transfers, River City followed the procedure provided by BFI.
¶ 12 The Department audited River City from October 1, 1993, to September 30, 1997 (period under review). The audit identified five categories of transactions for which River City did not pay use tax: (1) purchases of miscellaneous items; (2) purchases of motor fuel with respect to which the Department had issued Wis. Stat. § 78.75 motor fuel tax refunds; (3) transfers of non-fixed assets from other BFI subsidiaries, including tangible personal property such as books, videos, labels, posters, brochures, florescent bulbs, and containers; (4) purchases of recycling and waste reduction assets; and (5) transfers of fixed assets from other BFI subsidiaries, including trucks, tractors, and tractor-trailers that were between two and four years old. Related to the first category, River City did not appeal the audit. It conceded that it owed tax.
¶ 13 Related to the latter four categories, River City disagreed with the audit. Believing that River City needed to pay use tax, the Department sent River City a notice of field audit action (assessment), which assessed River City a total of $144,010.03. The total included $88,877.86 for unpaid use tax, $32,912.70 for interest, and $22,219.47 as a negligence penalty. The assessment covered the period under review.
¶ 14 After receiving the Department's assessment, River City filed a petition for redetermination with the Department's appellate bureau. In the petition, River City contended that the intercompany transfers were not subject to use tax, the recycling and waste reduction assets were exempt from the use tax, and that the audit had miscalculated the motor fuel sales tax. The Department denied it.
¶ 15 River City then filed a petition for the Commission to review the Department's denial of its petition for redetermination. The petition sought review related to intercompany transfers and the recycling and waste reduction assets. It did not seek review related to the motor fuel.
¶ 16 As litigation related to this case proceeded, BFI-Wisconsin and the Department litigated similar issues. Browning-Ferris Indus. of Wisconsin, Inc. v. DOR, No. 2004AP3091, unpublished slip op., 2001 WL 722126 (Wis. Ct. App. June 28, 2001), aff'g slip op., No. 00-CV-418 (Dane Co. Cir. Ct. Sept. 28, 2000), aff'g Wis. Tax Rptr. (CCH) ¶ 400-469 (WTAC 2000), petition for review denied 2001 WI 117, 247 Wis.2d 1036, 635 N.W.2d 784. In BFI-Wisconsin's case, the Commission reached the following conclusions of law: BFI-Wisconsin's recycling and waste reduction activities were not exempt from use tax, sales tax applied to its sales and rentals of compactors to customers, use *402 tax did not apply to intercompany transfers, and the motor fuel tax applied.
¶ 17 After the Commission issued its order in Browning-Ferris Industries of Wisconsin, Wis. Tax Rptr. (CCH) ¶ 400-469 (WTAC 2000), the Department issued a notice of nonacquiescence related to the Commission's order pertaining to the intercompany transfers. The Department issued the notice pursuant to Wis. Stat. § 73.01(4)(e)2. Its effect was that although the Commission's order related to intercompany transfers was binding in Browning-Ferris Industries of Wisconsin, Wis. Tax Rptr. (CCH) ¶ 400-469 (WTAC 2000), "the [c]ommission's conclusions of law, the rationale, and construction of statutes . . . related to the issue of the intercompany transfers [were] not binding upon or required to be followed by the [Department] in other cases."
¶ 18 BFI-Wisconsin appealed to the circuit court, but related to only the applicability of the recycling and waste reduction use tax exemption.[5] The circuit court affirmed the Commission's order. Browning-Ferris Indus. of Wisconsin v. DOR, No. 00-CV-418, unpublished slip op., (Dane Co. Cir. Ct. Sept. 28, 2000). BFI-Wisconsin appealed the circuit court's order, which the court of appeals affirmed. Browning-Ferris, 246 Wis.2d 990, 632 N.W.2d 124. BFI-Wisconsin's petition for review was denied by this court on September 19, 2001. Browning-Ferris Indus. of Wisconsin v. DOR, 2001 WI 117, 247 Wis.2d 1036, 635 N.W.2d 784.
¶ 19 Based on the outcome of Browning-Ferris, during the course of the Commission's review of this case, River City agreed to pay tax for both the recycling and waste reduction assets and the non-fixed assets received from intercompany transfers. Therefore, the Commission considered the taxability of only the transferred fixed assets and the applicability of the negligence penalty.
¶ 20 In considering the taxability of the fixed assets, and the applicability of the negligence penalty in this case, the Commission granted River City's motion for summary judgment. It concluded that intercompany transfers between BFI subsidiaries were not subject to use tax. The subsidiaries were not Wis. Stat. § 77.51(13) retailers and there was not a Wis. Stat. § 77.51(12) purchase. The Commission also concluded that River City had satisfied its burden of showing that its nonpayment of tax was "due to good cause and not due to neglect." Therefore, River City did not need to pay the Wis. Stat. § 77.60(3) negligence penalty.
¶ 21 The Department appealed to the circuit court. The circuit court reversed the Commission's order and it reinstated the assessment and the negligence penalty. In reviewing the Commission's order, the circuit court provided no deference to the Commission. Concerning the use tax issue, the circuit court characterized the issue as one of "very nearly first impression" that necessitated case law interpretation as much as statutory interpretation. It concluded that River City owed the amount assessed because the subsidiaries were § 77.51(13) retailers and, pursuant to *403 § 77.51(12)(a), River City purchased the fixed assets.
¶ 22 Concerning the negligence penalty, the circuit court reviewed the imposition of it de novo because it directly depended on the disposition of the use tax issue. The circuit court concluded that River City had not satisfied its burden and that the negligence penalty was properly imposed.
¶ 23 River City appealed to the court of appeals, which reversed the circuit court's order and reinstated the Commission's ruling and order. Related to the taxability of the intercompany transfers, the court of appeals concluded that the Commission's interpretation of the use tax statute was entitled to due weight deference. It held that the Commission's interpretation was reasonable and that the Department failed to offer a more reasonable interpretation.
¶ 24 Related to the negligence penalty, the court of appeals concluded that the Commission's interpretation of the penalty statute was entitled to great weight deference. It held that the Commission's determination that River City had satisfied its burden that its nonpayment was "due to good cause and not due to neglect" was reasonable. Therefore, the court of appeals reversed the circuit court and reinstated the Commission's ruling and order.
¶ 25 The Department sought review in this court, which we granted.

II. STANDARD OF REVIEW
¶ 26 This case requires us to interpret Wis. Stat. §§ 77.53(1) and 77.60(3). Statutory interpretation presents a question of law that we review de novo. Harnischfeger Corp. v. LIRC, 196 Wis.2d 650, 659, 539 N.W.2d 98 (1995). In interpreting statutes, we primarily focus on the statutory language. State ex rel. Kalal v. Cir. Ct. for Dane County, 2004 WI 58, ¶ 44, 271 Wis.2d 633, 681 N.W.2d 110. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶ 46. We assume that the statutory language expresses the legislature's intent. Id., ¶ 44. When it manifests a clear meaning, our inquiry ceases and we will apply that meaning. Lincoln Sav. Bank, S.A. v. DOR, 215 Wis.2d 430, 443, 573 N.W.2d 522 (1998).
A. Ambiguity
¶ 27 Only when a statute is ambiguous do courts apply rules of statutory construction or look to extrinsic evidence of the legislature's intent, such as an agency's interpretation. UFE Inc. v. LIRC, 201 Wis.2d 274, 281, 548 N.W.2d 57 (1996). "`Statutory interpretation involves the ascertainment of meaning, not a search for ambiguity.'" Kalal, 271 Wis.2d 633, ¶ 47, 681 N.W.2d 110 (quoting Bruno v. Milwaukee County, 2003 WI 28, ¶ 25, 260 Wis.2d 633, 660 N.W.2d 656). Ambiguity exists only when a statute reasonably gives rise to two or more interpretations. Bruno, 260 Wis.2d 633, ¶ 25, 660 N.W.2d 656. Mere disagreement about the meaning of the statute is not enough to constitute ambiguity. Kalal, 271 Wis.2d 633, ¶ 47, 681 N.W.2d 110. "[W]hen a case comes before this court it is obvious that people disagree as to the meaning to be given to a statute. This is not controlling. The court must determine whether `well-informed persons' could have been confused." Recht-Goldin-Siegal Constr., Inc. v. DOR, 64 Wis.2d 303, 306, 219 N.W.2d 379 (1974).
¶ 28 In interpreting §§ 77.53(1) and 77.60(3), therefore, we first determine whether either is ambiguous.
¶ 29 The relevant part of Wis. Stat. § 77.53(1) provides that use tax is "[a]n excise tax . . . levied and imposed . . . *404 on the storage, use or other consumption in this state of tangible personal property purchased from any retailer, at the rate of 5% of the sales price of that property." The issue before this court related to use tax is whether the intercompany transfers fall within the scope of the use tax statute. The legislature defined "retailer," in the section applicable to this case, using the term "seller." Wis. Stat. § 77.51(13)(a). "Seller" is defined by the scope of the sales tax statute. Wis. Stat. § 77.51(17). The sales tax statute imposes sales tax on a "retailer." Wis. Stat. § 77.52(1). A "retailer" is a "seller," and a "seller" collects "sales tax." Use tax applies to purchases from a "retailer." Wis. Stat. § 77.53(1). Juxtaposed, the statutes raise ambiguity related to the scope of the use tax. Because ambiguity exists related to § 77.53(1), we will consider extrinsic evidence to ascertain the legislature intent, such as the Commission's interpretation.
¶ 30 Wisconsin Statute § 77.60(3) provides the following:
If due to neglect an incorrect return is filed, the entire tax finally determined shall be subject to a penalty of 25% . . . of the tax exclusive of interest or other penalty. A person filing an incorrect return shall have the burden of proving that the error or errors were due to good cause and not due to neglect.
Unlike § 77.53(1), this language from § 77.60(3) does not reasonably give rise to multiple interpretations. It is not ambiguous. Therefore, extrinsic evidence, such as agency interpretations, will not be necessary in interpreting it. We will apply the statute's plain meaning.
B. Extrinsic Sources Used in Interpreting Ambiguous Statutes
¶ 31 Because § 77.53(1) is ambiguous, we will apply rules of statutory construction. Specifically, we avoid a construction of statutes that makes any part of the statute superfluous. Kollasch v. Adamany, 104 Wis.2d 552, 563, 313 N.W.2d 47 (1981). We also will resolve ambiguities in favor of the party upon whom the state seeks to impose a tax. Id. at 561, 313 N.W.2d 47; Kearney & Trecker Corp. v. DOR, 91 Wis.2d 746, 753, 284 N.W.2d 61 (1979). Because the state seeks to impose the use tax on River City, ambiguities will be resolved in River City's favor.
¶ 32 In addition to applying rules of statutory construction, we will consider extrinsic sources such as the Commission's interpretation of the statute. We are not bound by an agency's interpretation of statutory language, but we do at times defer to an agency when presented with an ambiguous statute. UFE, 201 Wis.2d at 284, 548 N.W.2d 57; State ex rel. Parker v. Sullivan, 184 Wis.2d 668, 699, 517 N.W.2d 449 (1994). Three possible levels of deference apply based on "the comparative institutional capabilities and qualifications of the court and the administrative agency." Id. The levels are great weight deference, due weight deference, or no deference.
¶ 33 Great weight deference applies when the following requirements are met:
(1) the agency was charged by the legislature with the duty of administrating the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute.
Harnischfeger, 196 Wis.2d at 660, 539 N.W.2d 98. Great weight deference applies because of an agency's experience, *405 technical competence, and specialized knowledge, which aid the agency in interpreting and applying the statute. Kelley Co. v. Marquardt, 172 Wis.2d 234, 244-45, 493 N.W.2d 68 (1992). When great weight deference applies, courts sustain any reasonable agency interpretation that is not contrary to the clear meaning of the statute. Even if a more reasonable interpretation exists, courts will sustain the agency's. UFE, 201 Wis.2d at 287, 548 N.W.2d 57. On the other hand, an agency's statutory interpretation is unreasonable if it "directly contravenes the words of the statute, it is clearly contrary to legislative intent or it is without rational basis." Harnischfeger, 196 Wis.2d at 662, 539 N.W.2d 98. The party seeking to overturn the agency's interpretation has the burden of showing the interpretation is unreasonable. Id. at 661, 539 N.W.2d 98.
¶ 34 We apply due weight deference when an agency has some experience in the area, but not the type of experience that puts it in a better position to interpret the statute than the court. UFE, 201 Wis.2d at 286, 548 N.W.2d 57. Deference applies in such cases because the legislature granted the agency enforcement power related to the statute. Id. When due weight deference applies, courts sustain an agency's reasonable statutory interpretations, unless the court finds another interpretation to be more reasonable. Id. at 286-87, 548 N.W.2d 57.
¶ 35 No deference applies when an agency addresses an issue that is clearly one of first impression or has inconsistently addressed the issue when it has been presented previously. Id. at 285, 548 N.W.2d 57. Neither of these situations exist related to the Commission's interpretation of either § 77.53(1) or § 77.60(3).[6]
¶ 36 In considering the Commission's interpretation of § 77.53(1), due weight deference is appropriate. The Commission has expertise related to use tax. However, the Commission did not rely on that expertise and specialized knowledge in interpreting the scope of the use tax statute. It depended on case law. Courts have expertise related to case law. Accordingly, the Commission was not in a better position than the courts to interpret § 77.53(1), and the related statutory definitions. Due weight deference is appropriate because the Commission has experience and specialized knowledge, but not the type that puts it in a better position than the courts.

III. USE TAX
¶ 37 We must interpret § 77.53(1) to determine whether the intercompany transfers River City received from other BFI subsidiaries are subject to use tax. The relevant part of Wis. Stat. § 77.53(1) provides the following: "[a]n excise tax . . . levied and imposed . . . on the storage, use or other consumption in this state of tangible personal property purchased from any retailer, at the rate of 5% of the sales price of that property." To determine whether use tax applies to the intercompany transfers, the BFI subsidiaries that transferred the fixed assets must be considered "retailers" and River City must have "purchased" the fixed assets. If either of these do not apply to this case, use tax does not apply to the intercompany transfers. The Commission, in concluding that the BFI subsidiaries were not "retailers" and the fixed assets were not a "purchase," *406 provided two independent rationales for the state to not impose use tax.
A. Retailer
¶ 38 In considering the term "retailer," the focus is on BFI subsidiaries that transferred the fixed assets to River City. It is not an examination where we determine whether River City constituted a "retailer."
¶ 39 The Commission concluded that the BFI subsidiaries that transferred assets to River City were not "retailers." We conclude that the Commission's interpretation of § 77.51(13) is reasonable because the BFI subsidiaries do not fall within the scope of any of the definitions provided in § 77.51(13).
¶ 40 The Department contended that the BFI subsidiaries fell within the scope of three provisions of § 77.51(13):(a), (am), and (b). As addressed below, we do not find any of the Department's interpretations to be more reasonable than the Commission's.
¶ 41 A § 77.51(13)(a) retailer is "[e]very seller who makes any sale of tangible personal property or taxable service." The type of transaction that makes a person a § 77.51(13)(a) retailer is a "mercantile one[]." Kollasch, 104 Wis.2d at 568, 313 N.W.2d 47; Frisch, Dudek and Slattery, Ltd. v. DOR, 133 Wis.2d 444, 448, 396 N.W.2d 355 (Ct.App.1986). The Kollasch court reached this conclusion by interpreting the statutory language. After noting the ambiguity caused by juxtaposing statutory definitions, the court resorted to dictionary definitions. It noted that a "retailer" was "`one that retails something . . . specif(ically): a merchant middleman who sells goods mainly to ultimate consumers.'" Kollasch, 104 Wis.2d at 566, 313 N.W.2d 47 (quoting Webster's Third International Dictionary (unab.1976)). "Merchant" means "`a buyer and seller of commodities for profit; . . . the operator of a retail business.'" Id. (quoting Webster's Third International Dictionary (unab.1976)). Based on the dictionary definitions of "retailer" and "merchant," the Kollasch court concluded that mercantile intent must be present for a person to be considered a § 77.51(13)(a) retailer.
¶ 42 Analysis related to § 77.51(13)(a) focuses on the specifics of the transaction involved. Id.; Frisch, 133 Wis.2d at 449, 396 N.W.2d 355. As noted in Kollasch, "[t]he meaning of the word `retailer' . . . depends on the transaction to which it relates." Kollasch, 104 Wis.2d at 566, 313 N.W.2d 47. For instance, the specifics of the transaction itself, rather than the profit motive of the Frisch law firm overall, determined whether it was a retailer when it charged clients for photocopies. Frisch, 133 Wis.2d at 449, 396 N.W.2d 355.
¶ 43 The BFI subsidiaries lacked the necessary mercantile intent in transferring fixed assets to River City to qualify as § 77.51(13)(a) retailers. They were not merchant middlemen in the business of transferring fixed assets. They transferred selected assets that they could no longer use as effectively as River City. They also did not make a profit from transferring the assets to River City. Although, BFI generally benefited from relocating assets where they could be used most effectively, Wisconsin is a legal entity theory state. Interstate Fin. Corp. v. Dep't. of Taxation, 28 Wis.2d 262, 273, 137 N.W.2d 38 (1965). We treat wholly-owned subsidiaries as independent legal entities, rather than as merely a part of the corporate shareholder. The BFI subsidiaries, as independent legal entities, did not have the requisite mercantile intent in transferring the assets at issue in this case. They were not § 77.51(13)(a) retailers.
*407 ¶ 44 A § 77.51(13)(am) retailer is "[a]ny person making any retail sale of a motor vehicle . . . [or] trailer . . . registered or titled, or required to be registered or titled, under the laws of this state or of the United States." The Department contended that the nature of the fixed assets transferred (i.e., trucks, tractors, and trailers) made this section applicable to this case. River City countered that the BFI subsidiaries did not fall within § 77.51(13)(am) because an intercompany transfer was not a "retail" sale. It emphasized the presence of the term "retail" as an adjective for "sale" in § 77.51(13)(am), which does not exist in § 77.51(13)(a).
¶ 45 The applicability of § 77.51(13)(am) turns on the meaning of "retail sale." The statutory definition of "sale" begins by stating that "`Sale', `sale, lease or rental', `retail sale', `sale at retail', or equivalent terms include any one or all of the following. . . ." Wis. Stat. § 77.51(14). The legislature did not provide any independent definition for the term "retail." Although the legislature mentions "sale" and "retail sale" in its definition of "sale," it must have some meaning or the inclusion of the word "retail" in § 77.51(13)(am) would be superfluous. We avoid a construction of a statute that results in words being superfluous. Kollasch, 104 Wis.2d at 563, 313 N.W.2d 47.
¶ 46 Words and phrases of statutes "shall be construed according to common and approved usage." Wis. Stat. § 990.01(1). Accordingly, we resort to dictionary definitions in discerning legislative intent when the legislature has not provided a definition. Kollasch, 104 Wis.2d at 566, 313 N.W.2d 47. "Retail," when used as an adjective, means "[o]f, relating to, or engaged in the sale of goods or commodities at retail." The American Heritage Dictionary of the English Language 1539 (3d ed.1992). "Retail," when used as a noun, means "[t]he sale of goods or commodities in small quantities directly to consumers." Id. "[I]n small quantities" denotes that a characteristic of "retail" is having an inventory of goods and commodities, from which sales occur directly to consumers. Merely passing along an isolated asset in a transaction is not enough to constitute "retail." In including "retail" as an adjective to "sale" in § 77.51(13)(am), the legislature conveyed its intent that taxes apply to only certain retailers that sell smaller quantities of goods from an inventory directly to consumers.
¶ 47 The intercompany transfers of fixed assets done by BFI subsidiaries do not qualify as "retail" sales because they lack the requisite retail nature that the legislature intended. The BFI subsidiaries merely passed along isolated assets to River City, without selling smaller quantities of an inventory directly to a consumer. They were not § 77.51(13)(am) retailers.
¶ 48 A Wis. Stat. § 77.51(13)(b) retailer, in pertinent part, is "[e]very person engaged in the business of making sales of tangible personal property for storage, use or consumption." The BFI subsidiaries that transferred the fixed assets to River City were not engaged in the business of transferring fixed assets. The BFI subsidiaries, like River City, were engaged in the business of collecting refuse. In the context of a publicly-traded corporation that reported annual revenues of over five billion dollars, River City receiving fixed assets valued at less than 1.2 million dollars over a four-year term clearly does not constitute BFI subsidiaries engaging in the business of transferring fixed assets.[7] BFI subsidiaries were not *408 § 77.51(13)(b) retailers. Accordingly, the BFI subsidiaries do not constitute retailers based on any of the definitions provided in § 77.51(13).
B. Purchase
¶ 49 Wisconsin Statute § 77.51(12)(a) defines "purchase" as follows: "Any transfer of title, possession, ownership, enjoyment, or use by: cash or credit transaction, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatever of tangible personal property for a consideration." The legislature has not provided a definition of "consideration" that applies to the subchapter on general sale and use tax.
¶ 50 Courts, however, have defined consideration. It may arise when there is a benefit to the promisor or a detriment to the promisee, First Wisconsin National Bank v. Oby, 52 Wis.2d 1, 6, 188 N.W.2d 454 (1971), such as a change in financial position. Hardscrabble Ski Area v. First Nat'l Bank, 42 Wis.2d 334, 344, 166 N.W.2d 191 (1969). It may also arise from "[m]utual promises for future performances of acts by the parties . . . if each of the promises is capable of being performed, are given in exchange for each other, and are mutually binding upon the parties." Madcap I, LLC v. McNamee, 2005 WI App 173, ¶ 8, 284 Wis.2d 774, 702 N.W.2d 16. Promises that are "performable, concurrent, and mutually binding upon both parties at the same time" constitute consideration. Stack v. Roth Bros. Co., 162 Wis. 281, 288, 156 N.W. 148 (1916).
¶ 51 The Restatement (Second) of Contracts § 71 (1981) provides that "[t]o constitute consideration, a performance or a return promise must be bargained for." § 71(1). The performance or return promise is bargained for if "it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." § 71(2). The requisite bargaining typically involves each party inducing the other to act.
¶ 52 In this case, River City received fixed assets from BFI subsidiaries and gave nothing in return. There is no evidence of a payment. There is no evidence that River City made any promises to the BFI subsidiaries. The BFI subsidiaries acted and got nothing in return. Accordingly, we conclude that the requisite consideration did not exist for the intercompany transfers to be "purchases" pursuant to § 77.51(12)(a).
¶ 53 The Department contended that consideration existed based on a number of different rationales. We find none of them to be more reasonable than the Commission's conclusion that the intercompany transfers were something other than "purchases" for use tax purposes.
¶ 54 First, the Department contended that even though the BFI subsidiaries did not reap a bargained for benefit, BFI did. Wisconsin, however, follows the legal-entity theory. Interstate Fin. Corp., 28 Wis.2d at 273, 137 N.W.2d 38. We treat wholly-owned subsidiaries as independent legal entities, rather than as merely a part of the corporate shareholder. Treating the BFI subsidiaries as independent corporations, there is no evidence that the subsidiaries got anything in return for transferring the fixed assets to River City.
*409 ¶ 55 Second, the Department also contended that Wisconsin has a statutory scheme that taxes all transfers of tangible personal property, unless an explicit exemption applies. Because River City has not identified an explicit exemption that applies to the intercompany transfers, the argument goes, some tax must apply. This ignores the nuances of the statutory scheme. For instance, this court has held that a § 77.51(13)(a) retailer must have mercantile intent. Kollasch, 104 Wis.2d at 568, 313 N.W.2d 47. Therefore, in a case where the person transferring tangible personal property lacks mercantile intent, he or she will not be subject to tax, even though no explicit exemption applies. The Department's assertion that Wisconsin has a statutory scheme that taxes all transfers of tangible personal property, unless an explicit exemption applies, is incorrect.
¶ 56 Finally, the Department contended that River City's bookkeeping manifested the necessary consideration for the intercompany transfers to be consideration. Consideration existed as a matter of law, the argument goes, as soon as it made an entry in its intercompany payables account. In support of this, the Department relied on its interpretation of § 77.51(14) and an Ohio Supreme Court decision, Hawthorn Mellody, Inc. v. Lindley, 65 Ohio St.2d 47, 417 N.E.2d 1257 (1981). An examination of both of these indicates the Department's final contention is also unpersuasive.
¶ 57 According to the Department, because a § 77.51(14) sale occurred consideration must have arisen when River City entered a liability in its intercompany payables account.[8] However, the occurrence of a § 77.51(14) sale is not the issue before this court. Focusing on whether or not a sale occurred is not relevant because the legislature did not include consideration as an element of a § 77.51(14) sale, as it did in defining "purchase." The recognition of a sale would be significant only if Wisconsin's statutory scheme imposed a tax on all transfers of tangible personal property. Then, either a sales tax or use tax would be owed once the determination of a sale had been made. As noted above, Wisconsin does not have such a statutory scheme. Analysis of § 77.51(14) merely diverts the analysis away from determining whether a "purchase" occurred.
¶ 58 The Department's citation of the Ohio Supreme Court decision is also unpersuasive because the court interpreted a distinguishable statutory scheme. The court interpreted a definition of "sale." Hawthorn Mellody, 417 N.E.2d at 1262. We are interpreting the definition of "purchase." The Ohio Legislature made the decision to "broadly define consideration." Id. The Wisconsin Legislature has not defined "consideration" at all. The Hawthorn Mellody taxpayer sought an exception, so the court construed the statute strictly, noting that the taxpayer had a "heavy burden to overcome." Id. River City does not seek an exception, but seeks to avoid imposition of a tax, which we construe in favor of the taxpayer. Kearney & Trecker, 91 Wis.2d at 753, 284 N.W.2d 61. River City, therefore, does not face the same heavy burden. The Hawthorn Mellody court held that because accrual entries reflect the existence of an expense or liability, the entries themselves created consideration. Because of the distinct statutory scheme, we find this holding unpersuasive related to this case.
*410 ¶ 59 The Department's contentions do not result in an interpretation that is more reasonable than the Commission's. We conclude that the necessary consideration did not exist to deem the intercompany transfers "purchases." Accordingly, the transfers do not fall within the scope of § 77.53(1) and River City does not owe use tax for the transfers.

IV. NEGLIGENCE PENALTY
¶ 60 Wisconsin Statute § 77.60(3) provides the following:
If due to neglect an incorrect return is filed, the entire tax finally determined shall be subject to a penalty of 25% . . . of the tax exclusive of interest or other penalty. A person filing an incorrect return shall have the burden of proving that the error or errors were due to good cause and not due to neglect.
As noted above, this language does not reasonably give rise to multiple interpretations. It is not ambiguous. Therefore, extrinsic sources, such as agency interpretations, will not be necessary in interpreting it. We will apply the statute's plain meaning. Based on the plain language, River City has the burden of proving that it filed an incorrect return due to good cause and not due to neglect.
¶ 61 The Department's field audit had a section enumerating its findings of neglect that justified imposing the negligence penalty. It referred to both the recycling and waste reduction assets and the intercompany transfer assets as "the [two] major areas of contention in this audit," and that both had been addressed in the previous audit.
¶ 62 The litigation between BFI-Wisconsin and the Department that overlapped with this case gave River City good cause for filing its return. Related to the intercompany transfers, River City filed its return in a manner consistent with the Commission's conclusion in Browning-Ferris. Concerning the portion of the assessment related to the recycling exemption issue, Browning-Ferris did not resolve the issue until seven years after the audit period. Accordingly, we conclude that River City has satisfied its burden. The negligence penalty need not be paid.
¶ 63 The Department contended that its stated rationale for the assessment of neglect should not be considered because the statute places the burden on the taxpayer to prove a lack of neglect. The legislature, however, specified that the Department would have to make a finding of neglect before imposing the negligence penalty.
¶ 64 Section 77.60(3) begins, "[i]f due to neglect an incorrect return is filed." This means that there must be a finding of neglect before the Department can impose the penalty. If this were not the case, the legislature could have provided the following: "If an incorrect return is filed. . . ." This would not require a finding of neglect on the part of the Department as a prerequisite to impose a negligence penalty. Therefore, to give meaning to the words of the statute, the Department must make some finding of neglect to impose the negligence penalty. It is due to the inclusion of "[i]f due to neglect," that the Department's findings of neglect is pertinent to determining whether a negligence penalty is appropriate.

V. CONCLUSION
¶ 65 The intercompany transfers River City participated in do not fall within Wisconsin's use tax statute. The BFI subsidiaries did not constitute retailers pursuant to § 77.51(13). The requisite consideration did not exist for the transfers to be considered § 77.51(12)(a) purchases. River City also satisfied its burden of showing that it had good cause for filing its return. *411 Accordingly, we affirm the court of appeals.
The decision of the court of appeals is affirmed.
¶ 66 SHIRLEY S. ABRAHAMSON, Chief Justice (dissenting).
I agree with the Department of Revenue and the circuit court and would reverse the decision of the Tax Appeals Commission.
¶ 67 In a thirty-seven-page, well-analyzed, well-reasoned and thorough opinion, the circuit court for Dane County, Judge Gerald C. Nichol, concluded that "River City's acquisitions of fixed assets through intercompany transfers were `purchases' from a `retailer' and are thus subject to the use tax. Furthermore, River City's failure to report all of its tax obligations was not due to good cause and was negligent."
¶ 68 I agree and find little need to substitute my own analysis for that of the circuit court. Instead, I shall quote from or refer to relevant passages from the circuit court's extensive opinion.

I
¶ 69 As to the first issue, whether the transfers were subject to use tax, the circuit court properly declined to give any deference to the Tax Appeals Commission's interpretation of the statutes because the issue was very nearly one of first impression.
¶ 70 The circuit court initially observed that the corporations were separate entities for state tax purposes:
River City is a separate legal corporate entity from BFI and all other BFI subsidiaries. For state tax purposes, each subsidiary is properly viewed as an independent entity, and accordingly, should also be treated as such in the context of this case. Wis. DOR v. River City Refuse Removal, Inc., No.2003CV2774, at 14 (Wis. Cir. Ct. Dane County, Aug. 2, 2004) (hereinafter "Circuit Court Memorandum Decision and Order").
¶ 71 The circuit court then held that the subsidiaries from which River City acquired the fixed assets were "retailers" under § 77.51(13)(b) and § 77.51(13)(am), based on the following analysis:
 "These transfers gave River City all rights [of] ownership of the assets. The fixed assets included various motor vehicles as well as other related assets between two and four years old. All motor vehicles acquired through these intercompany transfers were re-titled in River City's name. All fixed assets acquired in this manner were then depreciated on River City's income and franchise tax returns." Circuit Court Memorandum Decision and Order at 10.
 Kollasch v. Adamany, 104 Wis.2d 552, 568, 313 N.W.2d 47 (1981), holds that "[t]he construction which we give to `retailer' applies the sec. 77.51(7)(b), Stats., definition to all person [sic] `engaged in the business of making sales.' Those person [sic] are, by statute, required to pay a tax on the gross receipts of all retail sales that they enter into unless they can point to a specific exemption from the tax. Sec. 77.51(7)(a) requires persons who are not in the business of making sales to pay the sales tax if they are sellersi.e., engaging in a transaction for which the gross receipts are subject to the sales tax pursuant to sec. 77.52(1). The type of transactions which make one a sec. 77.51(7)(a) retailer are mercantile ones." Circuit Court Memorandum Decision and Order at 17.
 Accordingly, "there were two types of retailers under the statutes," including "persons who are not engaged in *412 the business of making sales, but who engage in a transaction for which the gross receipts are subject to the sales tax." Circuit Court Memorandum Decision and Order at 18.
 "The acquisitions made by River City from the various subsidiaries were neither isolated nor sporadic sales. Indeed, these acquisitions were constant in occurrence and [were] a vital means of supporting the company's operations. The subsidiaries were in the `business' of making sales under § 77.51(13)(b) because they were engaged in the transactions with the `object of gain, benefit, or advantage, either direct or indirect' under § 77.51(1). At least one of the subsidiaries that transferred assets to River City held a seller's permit, which renders all sales made by that subsidiary subject to taxation, absent an exemption. Furthermore, River City held a consumer use tax permit, because it made numerous purchases of taxable goods without sales tax being charged by the seller. The use tax permit fulfills the same purpose as the sales tax permit, and as such, River City's holding of the use tax permit further indicates to this Court that the parties from which River City acquired the fixed assets should properly be considered retailers." Circuit Court Memorandum Decision and Order at 24-25.
 "Furthermore, a considerable number of the fixed assets that River City acquired were motor vehicles. These motor vehicles were received by River City and subsequently re-titled in River City's name. The legislature placed specific focus on sellers of motor vehicles by enacting § 77.51(13)(am), which provides that a retailer is also `any person making any retail sale of a motor vehicle . . . registered or titled, or required to be registered or titled. . . .'" Circuit Court Memorandum Decision and Order at 25.
¶ 72 The circuit court also held that the acquisitions of fixed assets from other BFI subsidiaries were "purchases" under § 77.51(12)(a), reasoning as follows:
 Even though the intercompany transfers did not involve an exchange of money, "consideration can exist just by intent on behalf of the parties to be bound to the contract." Circuit Court Memorandum Decision and Order at 27.
 "The bookkeeping entries actually show that there was intent by the parties to be bound to the transaction. The entries made in River City's payables account do show a promise to pay for the liabilities the company has accrued. The subsidiaries from which River City acquired the assets have corresponding entries in their receivable accounts that show an expectation of payment from River City. Certainly, if the parent company BFI sold off one of these subsidiaries to an outside interest, the new owner would acquire all the assets and liabilities that their newly acquired company had incurred on its books." In other words, "[b]y recording the liabilities and receivables on their books, these subsidiaries are confirming that the transactions took place and are accurate depictions of the financial status of the companies. The entries show that the parties intended to be bound to the transactions." Circuit Court Memorandum Decision and Order at 27-28.
 "The changes in River City's financial records clearly results in consideration in the state of Wisconsin. A *413 change of financial position constitutes consideration. Hardscrabble Ski Area v. First Nat. Bank, 42 Wis.2d 334, 344, 166 N.W.2d 191 (1969). The acquisition of assets and the related bookkeeping entries changed the financial position of River City. After acquiring the fixed assets, River City was able to deduct depreciation expenses. These deductions then reduced River City's taxable income. This is an obvious benefit to River City that fulfills the definition of consideration." Circuit Court Memorandum Decision and Order at 28.
 "The bookkeeping entries are far more than some type of inventory tracking system. The entries themselves materially affect the financial value of the company." Circuit Court Memorandum Decision and Order at 29.
 "[T]he Court also finds ample evidence in the record that indicates that River City did, in fact, make payments for those assets." Circuit Court Memorandum Decision and Order at 30.
 Furthermore, "[t]he assets acquired by River City were subsequently depreciated. But, in order to depreciate the assets, River City must have incurred a cost for those assets. Under the accrual method of accounting, the amount that is expended or will be expended must be incurred before the company can use the amount in computing its expense deduction. Treas. Reg. § 1.446-1(c)(1)(ii)(B). Thus, if River City did not, as it consistently asserts, acquire the assets in exchange for some form of remuneration, then it would have no cost basis for depreciating those assets." Circuit Court Memorandum Decision and Order at 31.
¶ 73 The circuit court properly concluded that "the intercompany transfers were `purchases' from a `retailer' and thus subject to the use tax." Circuit Court Memorandum Decision and Order at 29.

II
¶ 74 As to the second issue, the circuit court properly gave no deference to the Tax Appeals Commission on the question whether the assessment of a negligence penalty was warranted because the penalty directly pertained to the disposition of the first issue, which the circuit court determined independently of the Tax Appeals Commission.
¶ 75 The circuit court then concluded that the negligence penalty was properly imposed upon River City. Important to the circuit court's analysis were two principles: 1) "under § 77.60(3) neglect is determined as of the date the tax return is filed," and 2) "the same statute places the burden of proof on the person filing an incorrect return to demonstrate that the errors were for good cause and not due to neglect." Circuit Court Memorandum Decision and Order at 34.
¶ 76 The circuit court reasoned as follows:
 "River City's position is that it was reasonable in not changing its tax reporting practices because it was waiting for the outcome of litigation by BFI-Wisconsin of the same issues. However, the timing of that litigation does not support River City's argument." Circuit Court Memorandum Decision and Order at 35.
 River City "was aware as a result of the previous audit that the DOR considered both activities to be taxable." Circuit Court Memorandum Decision and Order at 35.

*414  "Despite that knowledge, River City failed to properly report its tax obligations. The litigation involving BFI-Wisconsin was not commenced until four years after the end of the first fiscal year of the audit. It is untenable that a taxpayer could ignore its tax obligations until discovered by the DOR, and then avoid the negligence penalty because a separate company was litigating the same issues, well past the filing date when the neglect was determined." Circuit Court Memorandum Decision and Order at 36.
 "An appropriate course of action would have been for River City to report the activities that it knew to be considered taxable and then file for a refund pending the outcome of any subsequent litigation." Circuit Court Memorandum Decision and Order at 36.
¶ 77 The circuit court properly held that River City had not met its burden "to show that its failure to report its tax obligations was due to good cause and not neglect." Circuit Court Memorandum Decision and Order at 36.
¶ 78 I agree with the rationale offered by and the conclusions reached by the circuit court. I would reverse the court of appeals and hold that River City is liable for both the use tax and the negligence penalty assessed by the Department of Revenue.

III
¶ 79 I write further to express a caution about the method advanced in the majority opinion for determining what level of deference to afford to the Tax Appeals Commission's interpretation of a statute.
¶ 80 Relying on UFE Inc. v. LIRC, 201 Wis.2d 274, 548 N.W.2d 57 (1996), the majority opinion announces that "[w]e are not bound by an agency's interpretation of statutory language, but we do at times defer to an agency when presented with an ambiguous statute." Majority op., ¶ 32.
¶ 81 Essentially, the majority opinion concludes that if a statute is plain on its face, that is, not ambiguous, then no extrinsic sources, including agency interpretations, need be consulted to determine the statute's meaning.[1] Put another way, if a statute's meaning is unambiguous and obvious from the text, then the court's interpretation is the only reasonable interpretation of a statute and no deference need be given to an agency's interpretation.[2]
¶ 82 The majority opinion explains its approach as follows: "As a point of emphasis, the court will review the § 77.60(3) issue de novo because the statute lacks ambiguity. We will give the Commission's interpretation of § 77.60(3) no deference because of the lack of ambiguity, not because the Commission lacks experience or has previously been inconsistent." Majority op., ¶ 35 n. 6.
¶ 83 I believe this approach to deference to an agency's interpretation of a statute is problematic.
*415 ¶ 84 Traditionally, this court has not considered, as a threshold inquiry, whether a statute is ambiguous before examining whether to accord deference to an agency's statutory interpretation.[3] The court instead has stated that it decides questions of law but under some circumstances may accord deference to an agency's interpretation.
¶ 85 Rather than analyzing such questions as the experience an agency has with a certain statute, its specialized knowledge in a field, and whether it has been specially charged by the legislature to administer the statute to determine whether a certain level of deference should be afforded to an agency's interpretation, the majority opinion today allows courts to bypass this analysis by simply declaring the statute "unambiguous" and offering the court's interpretation of the statute. Whether deference is given to an agency's statutory interpretation should not fall prey to the easily manipulated test of "ambiguity."
¶ 86 As I have previously written, "[t]he ambiguous/unambiguous, literal, plain meaning debate is a word game. The characterizations of `ambiguous,' `unambiguous,' `literal,' and `plain meaning' are in the eyes of the beholder and appear to be conclusory labels a court pins on a statute."[4]
¶ 87 The two methods of determining the deference, if any, to afford an agency's interpretation of statutesthe one advocated today by the majority opinion and the one traditionally usedmay ultimately reach the same result. To avoid confusion and debate in future cases about the correct analysis, I would continue to apply the analysis traditionally employed for according deference to statutory interpretation of an administrative agency.
¶ 88 For the foregoing reasons, I dissent.
¶ 89 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.
NOTES
[1] All subsequent references to the Wisconsin Statutes are to the 1993-94 version, unless otherwise stated.
[2] River City was organized in 1978 as a wholly-owned subsidiary of Browning-Ferris Industries (BFI). In October 1997 all BFI subsidiaries were combined into one entity: BFI Waste Systems of North America, Inc. We refer to River City throughout this opinion because it was the business entity at the time of the audit at issue in this case.
[3] Allied Waste Industries, Inc., which trades on the New York Stock Exchange, bought out BFI in August of 1999 for a reported $9.1 billion dollars.
[4] Wisconsin adheres to the legal-entity theory, which requires "each separate legal entity . . . to file its own separate return." Interstate Fin. Corp. v. Dep't. of Taxation, 28 Wis.2d 262, 273, 137 N.W.2d 38 (1965).
[5] BFI-Wisconsin did not seek judicial review of the Commission's order as it related to either the taxability of the sales and rentals of compactors or the motor fuel tax.

In providing context for this case, the Commission recounted the procedural history of Browning-Ferris Industries of Wisconsin. After explaining that the Department issued the notice of nonacquiescence, the Commission stated that BFI-Wisconsin "appealed the Commission's other conclusions of law." This seems to indicate that BFI-Wisconsin sought judicial review of the Commission's order related to the taxability of the compactors and motor fuel, which was not the case.
[6] As a point of emphasis, the court will review the § 77.60(3) issue de novo because the statute lacks ambiguity. We will give the Commission's interpretation of § 77.60(3) no deference because of the lack of ambiguity, not because the Commission lacks experience or has previously been inconsistent.
[7] A look at the approximate dollar figures involved illustrates why BFI subsidiaries are clearly not Wis. Stat. § 77.51(13)(b) retailers engaged in the business of transferring fixed assets. River City received fixed assets worth $1,180,531.81 over a four-year period, according to the Department audit. Annually, that is an average of $295,132.95. BFI had eight subsidiaries. If all of the subsidiaries took part in the intercompany transfers to the same extent as River City, annually the fixed assets transferred would value $2,361,063.60, which would be less than 0.05% of BFI annual revenues.
[8] Section 77.51(14) defines "sale," in pertinent part, as "any one or all of the following: the transfer of the ownership of, title to, possession of, or enjoyment of tangible personal property."
[1] Majority op., ¶¶ 29-30, 32. I find it surprising that the majority opinion treats an agency's interpretation of a statute as an extrinsic source. The usual extrinsic source is "legislative history." I wonder whether under the majority's rubric prior case law interpreting a statute in question would also be considered an "extrinsic source," to be used only when a statute is deemed ambiguous.
[2] I also do not understand the reason for the majority's comparison of the reasonableness of the positions of the Department of Revenue and the Tax Appeals Commission. See majority op., ¶¶ 40, 53, 59. The court is reviewing the statutory interpretation and the decision of the Tax Appeals Commission, not reviewing the Department of Revenue.
[3] For an extensive discussion of the method traditionally used to determine what level of deference to afford an agency's statutory interpretation, including the numerous cases in which it was applied, see Racine Harley-Davidson v. Div. of Hearings & Appeals, 2006 WI 86, 292 Wis.2d 549, 717 N.W.2d 184.
[4] Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶ 67, 293 Wis.2d 123, 717 N.W.2d 258 (Abrahamson, C.J., concurring) (listing other cases describing the problematic aspects of the inquiry into ambiguity).