# 2022 WI APP 24

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2021AP765-CR

†Petition for Review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

　　　　　**PLAINTIFF-RESPONDENT,**

**V.**

**ANTONIO DARNELL MAYS,**

　　　　　**DEFENDANT-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | April 12, 2022 |
| Submitted on Briefs: | January 12, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Brash, C.J., Donald, P.J., and White, J. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:         On behalf of the defendant-appellant, the cause was submitted on the briefs of *John T. Wasielewski* of *Wasielewski & Erickson* of Milwaukee.

Respondent
ATTORNEYS:         On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *Sara Lynn Shaeffer*, assistant attorney general.

COURT OF APPEALS
DECISION
DATED AND FILED

April 12, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP765-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CF1428**

IN COURT OF APPEALS

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

    V.

ANTONIO DARNELL MAYS,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Affirmed*.

        Before Brash, C.J., Donald, P.J., and White, J.

    ¶1    BRASH, C.J. Antonio Darnell Mays appeals his judgment of conviction for felony murder, first-degree reckless homicide with a dangerous weapon as a party to a crime, and two counts of being a felon in possession of a firearm. He also appeals from the order denying him postconviction relief.

¶2 Mays argues that his conviction for felony murder with the underlying charge of armed burglary must be vacated because the crime, as advanced by the State, does not exist. Specifically, for the felony murder count the State argued that Mays caused the death of Malyk Smith while committing armed burglary, which was predicated on Mays entering a building with the intent to commit the felony of second-degree recklessly endangering safety. Mays asserts that one cannot *intend* to commit a reckless crime.

¶3 We disagree. Felony murder is committed when the death of another person is caused by a defendant during the commission of certain crimes, including burglary. The elements of burglary include the intent to either steal or to commit a felony. The evidence demonstrates that Mays forced his way into a building and started shooting with two guns, which is indicative of an intent to recklessly endanger the safety of those inside—a felony. Therefore, we conclude that Mays was convicted of a valid crime. Accordingly, we affirm.

## BACKGROUND

¶4 The charges against Mays stem from an incident that occurred in March 2018. According to the criminal complaint, police officers from the City of Milwaukee responded to a shooting at an apartment building on North 27th Street. The officers discovered two people inside the building who had been shot; both died at the scene. The victims were later identified as Smith and Romale Richardson.

¶5 Detectives interviewed two witnesses, Christopher Wright and Jervita Tisdale, who were present at the residence during the shooting. Wright stated that this was Smith's residence, and that there were several people there that night playing dice for money, including Richardson. Wright said at one point there was a knock at the door, which Smith answered, and a person came in and started

2

shooting. Wright stated that Richardson had a gun and fired back. Tisdale gave a similar account, except that she thought Richardson had opened the door—only slightly—and that the person then forced his way in and started shooting at Richardson, and that Richardson fired back at him.

¶6 Wright also told police that Brandon Jones was at the apartment playing dice that night. Wright heard Jones make a telephone call and tell that person that he had lost money playing dice; Jones also asked the others present for the address of the apartment during the call. Jones then left the apartment, and it was shortly thereafter that the shooting occurred.

¶7 The same day, officers responded to a report of a gun shot victim at St. Joseph's Hospital. That victim, identified as Mays, had been brought to the hospital by his cousin, Jones. Mays told police that Jones had picked him up and they drove to a residence, but he stayed in the car. Mays said he started walking to a gas station when he was approached by two Black males who attempted to rob him. He said he was running away from them when he was shot, and that Jones then picked him up and took him to the hospital.

¶8 Detectives interviewed Jones. Jones told them that he had lost money playing dice at Smith's residence, and that he had called Mays. Jones said that at some point after he left Smith's apartment, he and Mays were in a parking lot outside of the apartment; Mays went inside, and Jones heard approximately nine shots. Jones then saw Mays run outside with two guns. Jones said that he drove Mays to a residence where Mays left the guns, and he then drove Mays to the hospital.

¶9 Ballistics tests on ten bullet casings found at the scene indicated that there were three firearms fired at the scene: six casings came from the gun belonging to Richardson, which was found at the scene; three casings came from

3

a .45 caliber gun; and one casing came from a 9mm gun. Officers executed a search warrant at Mays's residence and discovered seven firearms, including a .45 caliber and a 9mm, which were later confirmed to match the casings retrieved from the shooting scene.

¶10 Neither Wright nor Tisdale could identify Mays in a line-up, but Tisdale identified a jacket that was recovered from Mays at the hospital as the jacket the shooter was wearing. Additionally, Mays's blood was found at the scene of the shooting.

¶11 Mays was charged with two counts of first-degree reckless homicide using a dangerous weapon, as a party to a crime, and two counts of being a felon in possession of a firearm. The matter proceeded to a jury trial in October 2018.

¶12 On the third day of trial, the State filed an amended information changing the first count of first-degree reckless homicide—for the death of Smith—to felony murder, with the underlying felony of armed burglary. For the record, the State explained that a charge of felony murder "better conform[ed]" to the evidence regarding Smith's death. Specifically, the State noted that it was not clear from the evidence who shot Smith during the "volley of gunfire" that was exchanged, but that the evidence did show that Smith was killed during the "unlawful intrusion" into the apartment. More particularly, the evidence suggested that Smith may have opened the door that night and, since he was shot in the back, Richardson may have shot him, not Mays.

¶13 The State asserted that this evidence supported the crime of armed burglary as the underlying felony, because Mays had "unlawfully entered the apartment with the intent to commit [a] felony"—to shoot Richardson. The State further noted that felony murder is a lesser-included offense of first-degree reckless

homicide, and thus it could ask for that jury instruction instead of amending the information.

¶14    Mays objected to amending the information, even though the new charge reduced his prison exposure.  He argued that amending the information at that point would be prejudicial, in that defending a burglary charge from the beginning may have altered his defense strategy.  Mays further argued that this was essentially a concession by the State that they could not prove the first count of first-degree reckless homicide, and requested that it be dismissed.

¶15    The trial court initially "tabled" its decision on whether to allow the amended information, but noted that its "inclination" was to not allow it and instead include felony murder in the jury instructions as a lesser-included offense.  As a result, the State agreed to withdraw the amended information, and Mays's trial counsel withdrew his objection.

¶16    As relevant to this appeal, the instructions provided to the jury by the trial court—which were agreed upon by the parties—included the elements of felony murder with the underlying crime of armed burglary, as a party to a crime while using a dangerous weapon.[1]  The court described for the jury the elements of this crime:

> 1) [T]he defendant intentionally entered a building.

---

[1]  This instruction was based on WIS JI—CRIMINAL 1424, the pattern jury instruction for the crime of "Burglary With Intent to Commit a Felony."  We note that there is a separate pattern jury instruction when the crime charged is "Burglary With Intent to Steal."  *See* WIS JI—CRIMINAL 1421.  This distinction was recognized in a discussion by the parties on the record prior to the trial court providing the instructions to the jury.  That discussion also addressed comments by the parties regarding the language of WIS JI—CRIMINAL 1424, particularly relating to the insertions in the instruction that specify the underlying felony.  The trial court determined that the instruction, as it was ultimately read to the jury, was "accurate" and "appropriate."

2) [T]he defendant entered the building without the consent of the person in lawful possession.

3) [T]he defendant knew that the entry was without consent.

4) [T]he defendant entered the building with the intent to commit second-degree recklessly endangering safety that is, the defendant intended to commit second-degree recklessly endangering safety at the time the defendant entered the building.

5) [T]he defendant committed the crime while armed with a dangerous weapon. A firearm, whether loaded or unloaded, is a dangerous weapon.

The jury instructions also provided the definition of second-degree recklessly endangering safety, which the court explained "is committed by one who recklessly endangers the safety of another human being."

¶17 Ultimately, the jury convicted Mays of felony murder, first-degree reckless homicide with a dangerous weapon as a party to a crime, and both counts of being a felon in possession of a firearm. Mays was sentenced in December 2018 to a global sentence of forty years of initial confinement and fifteen years of extended supervision.

¶18 Mays filed a postconviction motion seeking to vacate his felony murder conviction on the grounds that the burglary charge predicated on the intent to commit second-degree recklessly endangering safety is not a "cognizable crime under Wisconsin law because one cannot intentionally commit a reckless act." Therefore, Mays asserted that the trial court lacked subject matter jurisdiction to enter the conviction for felony murder.

¶19 The trial court rejected this argument. Relying on this court's decision in *State v. Kloss*, 2019 WI App 13, 386 Wis. 2d 314, 925 N.W.2d 563, the trial court determined that a person can intend to commit reckless conduct, particularly under

circumstances such as those that occurred in this case: Mays entered the apartment "gun in hand, and began firing," which indicates "he did so with the *intent* to endanger the safety of another human being by criminally reckless conduct." The trial court concluded that this is "plainly a crime under Wisconsin law," and therefore denied Mays's postconviction motion. This appeal follows.

## DISCUSSION

¶20 Mays presents the same argument on appeal—that his felony murder conviction with the underlying felony of armed burglary, which is predicated on an intent to commit second-degree recklessly endangering safety, is not a valid offense under Wisconsin law. This is a matter of statutory interpretation. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation presents a question of law that this court reviews *de novo*. *DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶26, 299 Wis. 2d 561, 729 N.W.2d 396.

¶21 Felony murder is defined as "caus[ing] the death of another human being while committing or attempting to commit" certain crimes, including burglary. *See* WIS. STAT. §§ 940.03, 943.10(2) (2017-18).[2] Burglary, in turn, occurs when a person "intentionally enters [any building or dwelling] without the consent of the person in lawful possession and with intent to steal *or commit a felony in such place[.]*" Sec. 943.10(1m) (emphasis added). The State's theory was that Mays entered Smith's apartment with the intent to commit the felony of second-

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version, unless otherwise noted.

degree recklessly endangering safety, which is committed when a person "recklessly endangers another's safety[.]" WIS. STAT. § 941.30(2).

¶22      Mays, in support of his argument, cites *State v. Melvin*, 49 Wis. 2d 246, 181 N.W.2d 490 (1970), *overruled in part by State v. Smith*, 55 Wis. 2d 304, 198 N.W.2d 630 (1972) (clarifying the proper test for determining a lesser-included crime). In *Melvin*, the defendant was charged with attempted first-degree murder, but ultimately was convicted of endangering safety by conduct regardless of life. *Id.* at 249, 254-55. Melvin argued that the trial court had erred in failing to provide jury instructions on other offenses that Melvin asserted were lesser-included crimes, including attempted homicide by reckless conduct. *Id.* at 249. The court concluded that there was "no such crime," because to "attempt" a crime "requires that the actor have an intent to perform acts and attain a result which if accomplished would constitute the crime," and "[h]omicide by reckless conduct does not require any intent[.]" *Id.* at 249-50. Mays also cites *State v. Carter*, 44 Wis. 2d 151, 170 N.W.2d 681 (1969), where, similar to *Melvin*, the court concluded that lesser degrees of homicide which did not require intent were "not reconcilable with the concept of attempt." *See Carter*, 44 Wis. 2d at 155.

¶23      This is because, by definition, an attempt to commit a crime "requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime[.]" WIS. STAT. § 939.32(3) (2019-20).[3] Thus, because there was no element of intent for the crimes for which the defendants in *Melvin* and *Carter* sought jury instructions, our supreme court determined there

---

[3] We note that the substantive language of the current "attempt" statute quoted here is the same as in the 1969-70 version of the Wisconsin Statutes in effect at the time of the decisions in *State v. Carter*, 44 Wis. 2d 151, 170 N.W.2d 681 (1969) and *State v. Melvin*, 49 Wis. 2d 246, 181 N.W.2d 490 (1970), *overruled in part by State v. Smith*, 55 Wis. 2d 304, 198 N.W.2d 630 (1972).

8

could be no attempt of those crimes; in other words, a charge of attempt of those crimes would not be valid under Wisconsin law. *See Melvin*, 49 Wis. 2d at 249-50; *Carter*, 44 Wis. 2d at 155.

¶24 Mays's reliance on those cases is misguided. Although "[h]omicide by reckless conduct does not require any intent," *see Melvin*, 49 Wis. 2d at 250, here the State was not trying to prove that Mays intended to cause Smith's death through his criminally reckless conduct. Rather, the State sought to prove that Mays intended to endanger the safety of Richardson—as well as the other people in Smith's apartment—by his criminally reckless conduct of forcing his way into the apartment and firing two guns. *See* WIS. STAT. § 941.30(2). His intent to commit this felony upon entering Smith's apartment without consent proved the requisite elements of burglary, and it was during the commission of that burglary that he committed felony murder by causing Smith's death. *See* WIS. STAT. §§ 940.03, 943.10(1m).

¶25 A similar issue was addressed by this court in *Kloss*. In *Kloss*, as relevant to this issue, the defendant was charged with solicitation of first-degree reckless injury. *Id.*, 386 Wis. 2d 314, ¶5. He argued that "it is not possible for a person to intend that another person succeed in causing great bodily harm by reckless conduct" because "whether harm will result from reckless conduct is 'entirely unpredictable.'" *Id.*, ¶9. In other words, the defendant asserted that "the resulting injury is unknowable at the time a solicitation occurs and, therefore, it is not possible to intend such injury." *Id.*

¶26 This court rejected that argument, stating

> We see no reason why a *solicitor* cannot intend, at the time he or she solicits reckless conduct from another, that great bodily harm result from the *solicitee's* reckless

9

conduct. It may be true that a solicitor cannot know with certainty at the time of the solicitation whether an injury will in fact result from the solicitee's conduct—such uncertainty is inescapable in an inchoate crime such as solicitation. But no level of certainty is required to form a purpose to cause a particular result—that is, an intent that a result take place. *See* WIS. STAT. § 939.23(4) (the phrase "with intent that" means that an actor "has a purpose to ... cause the result specified").

*Id.*, ¶10.

¶27 That same reasoning applies in this case. As the State explained to the trial court:

We heard that Mr. Jones was upset and frustrated over his losses at gambling, that he believed that dope or coke had been taken from him in the residence, and that he essentially according to [Mays]'s own daughter was upset and asked [Mays] to come roll with him.

The plan was clearly that he intended to enter. Came guns blazing. We heard from Miss Tisdale when he entered into that location he bum rushed, so not consensually. But the facts support an argument that he did not consensually enter that apartment but that he forced his way in with the intent to shoot at the individuals inside that apartment namely as we heard through Jervita Tisdale that he went straight for Mr. Richardson and continued shooting at him.

That's the underlying felony second[-]degree recklessly endangering safety that he intended to commit[.]

¶28 Like the defendant in *Kloss*, while Mays could not know with certainty that his conduct would cause Smith's death, the certainty of that result was not required for Mays to "form a purpose to cause a particular result—that is, an intent that a result take place." *See id.*, 386 Wis. 2d 314, ¶10; *see also* WIS. STAT. § 939.23(4). Rather, Mays's actions reflect that he had formed a purpose to endanger the safety of Richardson and others in Smith's apartment, which was the clear result of his criminally reckless conduct. *See* WIS. STAT. § 941.30(2).

¶29    Therefore, we conclude that Mays's conviction for the crime of felony murder, with the underlying crime of armed burglary predicated on his intent to commit second-degree recklessly endangering safety, is a valid crime under Wisconsin law.  Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.