Ho-Chunk Nation, Petitioner-Appellant,†

v.

Wisconsin Department of Revenue,
Respondent-Respondent.

Court of Appeals

*No. 2007AP1985. Submitted on briefs January 14, 2008.
—Decided May 1, 2008.*

**2008 WI App 95**

(Also reported in 754 N.W.2d 186.)

† Petition for review granted 9/11/08.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Edward P. Sheu* and *Michael P. Murphy* of *Best & Flanagan LLP*, Minneapolis, Minnesota.

On behalf of the respondent-respondent, the cause was submitted on the brief of *F. Thomas Creeron III*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. This appeal concerns the Ho-Chunk Nation's claim for a refund of cigarette taxes under WIS. STAT. § 139.323 (2005–06)[1] in respect to sales on the DeJope property. The Tax Appeals Commission

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

denied the claim because it concluded the DeJope property was not "designated . . . trust land on or before January 1, 1983" as required by the statute. *See* § 139.323(3). The circuit court affirmed and the Ho-Chunk Nation appeals.

¶ 2. We agree with the commission and the circuit court that the statutory phrase means that the United States government must hold the land in trust on or before January 1, 1983. We conclude that the United States government does not hold the land in trust until formal acceptance under 25 C.F.R. § 151.14 (2007)[2] occurs. Because this did not occur with respect to the DeJope property until after January 1, 1983, the Ho-Chunk-Nation is not entitled to a refund. Accordingly, we affirm on this issue.

¶ 3. We also affirm the circuit court's order denying the Nation's motion for a remand to the commission for the purpose of submitting additional evidence.

## BACKGROUND

¶ 4. The Ho-Chunk Nation (hereafter the Nation)[3] is a federally recognized Indian tribe. In August 1982, an authorized representative of the Secretary of the United States Department of the Interior approved the purchase in trust for the Nation of the DeJope property—a five-acre parcel of off-reservation property

---

[2] All references to the Code of Federal Regulations, C.F.R., are to the 2007 version unless otherwise noted. We refer to the 2007 version because it is substantively the same as the 1982 version, which was in effect at the time of the relevant events. Only the numbering of the sections of 25 C.F.R. pt.151 has changed.

[3] The Ho-Chunk Nation was formerly known as the Wisconsin Winnebago Tribe.

489

located in the Town of Blooming Grove in Dane County, subject to certain requirements in 25 C.F.R. pt. 151. The deed transferring the DeJope property to the United States government in trust for the Nation was executed by the grantor on October 29, 1982. On January 31, 1983, an authorized representative of the Secretary approved the deed. The deed was recorded with the Register of Deeds of Dane County on March 18, 1983.

¶ 5. WISCONSIN STAT. § 139.31 imposes an excise tax on the sale of cigarettes at the time of the sale and provides that the tax shall be passed on to the ultimate consumer of the cigarettes. WISCONSIN STAT. § 139.323 provides for a partial refund of cigarette taxes to Indian tribes as follows:

> **Refunds to Indian tribes**. The department shall refund 70% of the taxes collected under s. 139.31(1) in respect to sales on reservations or trust lands of an Indian tribe to the tribal council of the tribe having jurisdiction over the reservation or trust land on which the sale is made if all the following conditions are fulfilled:
>
> (1) The tribal council has filed a claim for the refund with the department.
>
> (2) The tribal council has approved the retailer.
>
> (3) The land on which the sale occurred was designated a reservation or trust land on or before January 1, 1983.
>
> (4) The cigarettes were not delivered by the retailer to the buyer by means of a common carrier, a contract carrier or the U.S. postal service.
>
> (5) The retailer has not sold the cigarettes to another retailer or to a jobber.

¶ 6. "Trust lands" is defined in Wɪs. Sᴛᴀᴛ. § 139.30(13m) as "any lands in this state held in trust by the U.S. government for the benefit of a tribe or a member of a tribe."

¶ 7. Relying on Wɪs. Sᴛᴀᴛ. § 139.323, the Nation filed with the Department of Revenue a claim for refund of seventy percent of the taxes paid on cigarette sales by the Nation on the DeJope property during certain periods in 2003 and 2004. The Department denied the claim and denied the petition for redetermination on the ground that the DeJope property was not "designated . . . trust land on or before January 1, 1983" as required by § 139.323(3). The Nation filed a petition for review with the commission. The Nation's position was that the DeJope property was "designated . . . trust land" in August 1982, when the Secretary's authorized representative approved the purchase of the land in trust. The commission affirmed the Department on summary judgment. The commission agreed with the Department that the DeJope property was not "designated . . . trust land" until the United States held title, and that was not until an authorized representative of the United States approved the deed on January 31, 1983. The commission denied the Nation's request for a rehearing.

¶ 8. The Nation appealed and the circuit court affirmed. The court concluded that it was more reasonable to construe the phrase "designated . . . trust land" in Wɪs. Sᴛᴀᴛ. § 139.323(3) to mean held by the United States government in trust, rather than approved for purchase in trust. The court denied the Nation's motion for a remand to the commission to permit it to submit additional evidence, reasoning that the proposed additional submissions did not create a factual dispute material to the issue of the proper construction and application of the statute.

## DISCUSSION

¶ 9. On appeal the Nation renews its argument that "designated . . . trust land" in WIS. STAT. § 139.323(3) means the date on which the DeJope property was approved for purchase by the United States government in trust for the Nation. In the alternative, the Nation argues that the circuit court erred in not ordering a remand to permit it to submit additional evidence to the commission.

### I. Construction of WIS. STAT. § 139.323

■

¶ 10. The primary issue is the proper construction of the statute. We review the commission's decision on this point, not that of the circuit court. *Kamps v. DOR*, 2003 WI App 106, ¶ 10 n.4, 264 Wis. 2d 794, 663 N.W.2d 306.

■

¶ 11. The proper construction of a statute presents a question of law, and our review is generally de novo. *Id.*, ¶ 11. However, we may, depending on the circumstances, give some degree of deference to the agency's construction. *Id.*[4] We agree with the Nation that the appropriate standard of review here is de novo rather than the due weight deference advocated by the

---

[4] We give great weight deference when:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) . . . the interpretation of the agency is one of long-standing; (3) . . . the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) . . . the agency's interpretation will provide uniformity and consistency in the application of the statute.

> We give a lesser amount of deference—due weight—when the agency has some experience in the area but has not developed the

Department. De novo review is appropriate when the issue is one of first impression, *DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 35, 299 Wis. 2d 561, 729 N.W.2d 396, and the commission itself acknowledged that the issue before it was one of first impression. In addition, a resolution of the issue involves aspects of federal law regarding Indian trust lands, a topic on which the commission has no more expertise than a court.

¶ 12. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, the meaning of the statute is plain, then we apply that plain meaning. *Id.*, ¶ 45. On the

---

expertise that necessarily places it in a better position than the court to make judgments regarding the interpretation of the statute.

. . . We give no deference to the agency, and review the issue de novo, when the issue before the agency is one of first impression or the agency's position has been so inconsistent as to provide no real guidance.

*Kamps v. DOR*, 2003 WI App 106, ¶¶ 11–12, 264 Wis. 2d 794, 663 N.W.2d 306 (citations omitted).

other hand, if the statutory language is ambiguous—that is, capable of being understood by reasonably well-informed persons in two or more senses—then we may employ sources extrinsic to the statutory text. *Id.*, ¶¶ 47, 50. These extrinsic sources are typically items of legislative history. *Id.*, ¶ 50.

¶ 13. Beginning with the statutory language here, we see that the introductory paragraph of WIS. STAT. § 139.323 provides for refunds of seventy percent of the cigarette taxes collected "in respect *to sales on reservations or trust lands of an Indian tribe*[.]"[5] (Emphasis added.) This language plainly means that the land on which the sale takes place must be reservation or trust land at the time of the sale. We do not understand the Nation to be arguing otherwise. The dispute between the parties arises because the condition establishing a limiting date uses the word "designated" prior to "reservation or trust land on or before January 1, 1983." Section 139.323(3).

¶ 14. The Nation's position is that the word "designated" must add a meaning to "reservation or trust land"; otherwise it is surplus. The meaning it adds, according to the Nation, is that the land need not actually be a reservation or land held in trust on or before January 1, 1983, but must only be "designated" either a reservation or trust land by that date. The Nation asserts that the DeJope property was "designated" a trust land on the date the Secretary's autho-

---

[5] "Reservation" is defined in WIS. STAT. § 139.30(9) as "all land within the boundaries of the Bad River, Forest County Potawatomi, Lac Courte Oreilles, Lac du Flambeau, Menominee, Mole Lake, Oneida, Red Cliff, St. Croix and Stockbridge-Munsee reservations and the Winnebago Indian communities." Because the parties' arguments focus exclusively on the meaning of "designated" in connection with "trust land," we do so as well.

rized representative approved its purchase by the United States government in trust.

¶ 15. The Department's position is that "designated" is used to identify the act of the United States government that makes the land a reservation or trust land. According to the Department, with respect to trust land that is the act by which the United States government acquires title to the land in trust. The Department contends this occurred on the date on which the Secretary's authorized representative approved the deed.

■

¶ 16. We do not agree with the Nation that a dictionary definition of "designate" resolves the dispute. While we may resort to a dictionary to determine the common meaning of a term, *see State v. Sample*, 215 Wis. 2d 487, 499, 573 N.W.2d 187 (1998), it appears to us that the parties implicitly agree that "designate" has a specialized meaning in this context. For example, both refer us to federal regulations governing the process by which the United States government acquires land in trust for Indian tribes. *See* 25 C.F.R. pt. 151. In addition, even if we consider the dictionary definitions provided by the Nation, we conclude they do not resolve the dispute; rather, deciding which definition to choose simply reframes the dispute. The definitions the Nation chooses—"select" and "nominate," *see* BLACK'S LAW DICTIONARY 447 (6th ed. 1990)—have a preliminary sense to them that would support the Nation's proposed construction. However, the definitions "specify," "give a name or title to," and "characterize," *see* AMERICAN HERITAGE COLLEGE DICTIONARY 376 (3d ed. 1993), suggest that the property would need to actually be held in trust before the property could be so specified, named, titled, or characterized.

¶ 17. We conclude the meaning of "designated . . . trust land" as in WIS. STAT. § 139.323(3) is ambiguous. The meanings proposed by both parties are reasonable in the context of this statute.

¶ 18. The parties have presented us with no legislative history regarding WIS. STAT. § 139.323. However, both refer us to the federal regulations and to federal case law in support of their positions.

¶ 19. The federal regulations, often referred to as the "fee-to-trust" regulations, provide a definition of "trust land or land in trust status" that is essentially the same definition as "trust lands" in WIS. STAT. § 139.30(13m): "land the title to which is held in trust by the United States for an individual Indian or a tribe[.]" 25 C.F.R. § 151.2(d). The process for acquiring "off-reservation" property such as DeJope consists of these steps: (1) a written request to the Secretary of the Interior or authorized representative (Secretary); (2) notice by the Secretary to the state and local government and an opportunity for comment; (3) consideration by the Secretary of specified criteria; (4) a decision by the Secretary whether to grant or deny the request with notice to the applicant; (5) if the request is granted, a notice in the Federal Register or specified newspaper stating that "a final agency determination to take land in trust has been made" and the Secretary "shall acquire title in the name of the United States no sooner than thirty days after the notice is published"; (6) examination of title evidence and elimination of any liens, encumbrances, or infirmities that the Secretary may require "prior to taking final approval action"; and (7) "formal acceptance of land in trust status . . . by the issuance or approval of an instrument of conveyance by the Secretary as is appropriate in the circumstances." 25 C.F.R. §§ 151.9–14.

¶ 20. These regulations do not use the term "designate" at any point in the process. Nonetheless, the Nation contends we should defer to a Bureau of Indian Affairs official's letter on what "designated" means. In a letter to the Department concerning the DeJope property, written after this dispute arose, the official refers to August 20, 1982, as the date on which the DeJope property was "authorized/designated to be taken into trust" and also described the "[s]ubsequent approval of the deed" as a "formality that would not impact the prior authorization/designation . . . ." If "designated . . . trust land" were a phrase used in the federal regulations it might be reasonable to conclude the Wisconsin legislature intended the same meaning in WIS. STAT. § 139.323, and it might be appropriate to consider an official federal interpretation of that phrase. However, because the term does not appear in the regulations, we conclude the opinion of a federal official on what the phrase means has no bearing on the legislature's intent.

¶ 21. Although the regulations provide no direct support for either party's proposed construction of "designated," they do make clear that the Secretary's approval of a request to purchase is not the act by which the United States government acquires the land in trust. The required notice states that the Secretary "shall acquire title in the name of the United States no sooner than thirty days after the notice is published." 25 C.F.R. § 151.12. This plainly means that the Secretary has not yet done so at the time of the notice, which occurs after approval of the request to purchase. In addition, the title examination provision makes clear that the Secretary has, at that point in the process, yet to take "final approval action" on the acquisition. 25 C.F.R. § 151.13. We conclude that the only reasonable

497

reading of the federal regulations is that the formal acceptance by the Secretary, accomplished by means of the issuance or approval of an instrument of conveyance, is necessary for the land to be held in trust by the United States government.

¶ 22. Two federal cases cited by the Department support our conclusion. In *United States v. Keweenaw Bay Indian Community*, No. 2:92–CV-265, slip op. at 2 (W.D. Mich. Sept. 27, 1993), the court construed language in 25 U.S.C. § 2719 that prohibited gaming on "lands acquired by the Secretary in trust for the benefit of an Indian tribe" after a certain date. The court concluded it was clear that land is acquired by the Secretary in trust when the formalization of acceptance of the land in trust status occurs under 25 C.F.R. § 151.14, regardless of the date of the deed approved by the Secretary.[6] *Id.* at 3. In *In re Sunflower Racing, Inc.*, 219 B.R. 587, 602 (Bankr. D. Kan. 1998), a bankruptcy plan stated the implementation date was "the day when the Property is acquired by, and taken into trust by the United States Department of the Interior for the benefit of, [sic] the Tribe . . . ." The court stated that "[t]he use of the words 'acquired by' implies that the property is not to be considered in trust until formal acceptance of the land under 25 C.F.R. § 151.14 by issuance or approval of an instrument of conveyance." *Id.*

¶ 23. Thus, if the Department is correct that "designated . . . trust land" means the act by which the United States government acquires the land in trust, then the Department is correct that this did not occur until January 31, 1983.

---

[6] At the time of this decision, 25 C.F.R. § 151.14 was numbered 25 C.F.R. § 151.13. As previously noted, we use the current number. *See* footnote 2, *supra*.

¶ 24. We now consider the federal case law that, the Nation contends, supports its proposed construction of "designated . . . trust land." These cases construe the term "Indian country," a term that has been used in federal statutes since the early 1880s. *See United States v. McGowan*, 302 U.S. 535, 537 (1938); *see also United States v. John*, 437 U.S. 634, 649 n.18 (1978). Currently the term is defined in 18 U.S.C. § 1151 (2006) to include, besides Indian reservations and Indian allotments, "all dependent Indian communities within the borders of the United States . . . ." This definition of Indian country applies in the context of both criminal and civil jurisdiction. *DeCoteau v. District County Court*, 420 U.S. 425, 427 n.2 (1975). For example, the United States Supreme Court has employed this statutory definition in determining the scope of tribal sovereign immunity in matters of taxation. *See Oklahoma Tax Comm'n v. Citizen Band Potawotami Indian Tribe*, 498 U.S. 505, 511–13 (1991) (trust lands as well as reservations are included within the scope of tribal sovereign immunity but a state nonetheless has the authority to tax cigarette sales on trust land by the tribe to non-members).[7]

¶ 25. The Nation is correct that the test for determining whether land is "Indian country" does not depend on whether it is "denominated 'trust land' or

---

[7] The Nation makes no claim in this case that a tax is being wrongfully imposed on the sale of cigarettes to tribal members. We note that Wis. Stat. § 139.325 provides that the "department may enter into agreements with Indian tribes to provide for the refunding of the cigarette tax imposed under s.139.31(1) on cigarettes sold on reservations to enrolled members of the tribe residing on the tribal reservation." *See* Wis. Admin. Code §§ Tax 9.08 and 9.09 (Aug. 1996) for more detail on refunds regarding sales to residing tribal members.

'reservation' . . . [but on] whether the area has been 'validly set aside for the use of Indians as such, under the superintendence of the government.' " *See id.* at 511 (citations omitted). However, neither the fee-to-trust regulations nor Wis. Stat. § 139.323 use the term "Indian country." Thus, the fact that this term might include land that is neither a reservation nor trust land does not aid us in construing "designated a reservation or trust land" in § 139.323(3).

¶ 26. The Nation cites *United States v Roberts*, 904 F. Supp. 1262 (E.D. Okla. 1995), *aff'd*, 185 F.3d 1125 (10th Cir. 1999), as "illustrative of the broad definition of Indian lands, even in the absence of the formal . . . deed." However, *Roberts* was concerned with land taken into trust in 1976, prior to the promulgation of the fee-to-trust regulations, created by 45 Fed. Reg. No. 183, 62,034 (September 18, 1980) (codified at 25 C.F.R. pt. 120a).[8] *Roberts*, 904 F. Supp. at 1264. The district court comments on which the Nation relies—that "[w]hen trust land is acquired, the federal government must take 'some action indicating that the land is designated for use by Indians,' " *id.* at 1267 (citation omitted)—do not help decide at what point in the procedure now required by the regulations land is "designated" trust land.

¶ 27. Finally, the Nation contends that, if the statutory language is ambiguous, we must construe it in favor of the Nation because that principle was established by the United States Supreme Court. The

---

[8] 25 C.F.R. pt. 120a (1981) was redesignated by 47 Fed. Reg. 61, 13,326 (March 30, 1982) (codified at 25 C.F.R. ch. I), and the substance of that section is currently codified at 25 C.F.R. pt. 151.

Nation refers us to *Bryan v. Itasca County* in which the Court stated that, "in construing this 'admittedly ambiguous' statute, we must be guided by that 'eminently sound and vital cannon' that 'statutes passed for the benefit of dependent Indian tribes . . . are to be liberally construed, doubtful expressions being resolved in favor of the Indians.' " 426 U.S. 373, 392 (1976) (citations omitted). However, an examination of the origin and use of this canon of construction shows that its application is by no means automatic. This "pro-Indian canon is [not] inevitably strong[], particularly where interpretation of a [federal statute] rather than an Indian treaty is at issue." *Chickasaw Nation v. United States*, 534 U.S. 84, 95 (2001). This principle of statutory construction is particularly applicable

> in the face of claims that ambiguous statutes abolish by implication Indian tax immunities. "This is so because . . . Indians stand in a special relation to the federal government from which the states are excluded unless Congress has manifested a clear purpose to terminate (a tax) immunity and allow States to treat Indians as part of the general community."

*Bryan*, 426 U.S. at 392 (citations omitted).

¶ 28. The Nation points to cases from other states that have employed this canon. In *Dark-Eyes v. Commissioner of Revenue Services*, 887 A.2d 848, 851 (Conn. 2006), the court construed the term "Indian country" in 18 U.S.C. § 1151 (2006) in deciding whether an enrolled tribal member was exempt from state income tax. In *State v. Ambro*, 123 P.3d 710, 713–14 (Idaho Ct. App. 2005), the court decided whether the state had jurisdiction to enforce its criminal law against an Indian on an Indian reservation. Like the federal cases, these cases

applied this canon when there were issues of tribal sovereignty and of immunity from state law enforcement.

¶ 29. We conclude the application of this canon is not appropriate in this case. There is no issue of tribal sovereignty. The Nation is not disputing that the State of Wisconsin may impose taxes on cigarettes; rather the Nation is contending that the Wisconsin legislature intended to give a broader rather than a narrower scope to the refund of the taxes collected. We see nothing in the case law the Nation has presented that would either mandate or favor the application of the "pro-Indian canon" in this case.[9]

¶ 30. Because the federal regulations and federal case law cited by the parties do not resolve the dispute, we return to an examination of the statutory language. We identify two problems with the Nation's proposed construction. First, we can discern no rationale for anchoring the time limitation in WIS. STAT. § 139.323(3) to a broader concept of trust land than that in the introductory paragraph. In other words, we see no purpose in having a time period during which the property where the sale occurred meets the condition of subsec. (3) but for which no refund is available because

[9] The Nation argues that under the Supremacy Clause of the United States Constitution, federal law "prevails over any inconsistent language or interpretation of WIS. STAT. § 139.323" by the commission. However, the Nation has not shown that the commission's construction is inconsistent with federal law. The Nation has identified no federal statute, regulation, or case that decides what the term "designated . . . trust land" means or that precludes the Wisconsin legislature from basing a condition for tax refunds on the date on which the United States government acquires the land in trust. We therefore do not further address the Supremacy Clause argument.

the land was not held in trust at the time of the sale. The Nation offers no rationale for this discrepancy.

¶ 31. Second, tying the date in WIS. STAT. § 139.323(3) to the approval of the request to purchase produces uncertainty regarding the lands that will be eligible for the refunds. Because § 139.323 affects the State's revenues,[10] it is more reasonable that the legislature intended to choose a certain method of determining which lands would qualify for the refunds. Lands that were held in trust by the United States government on or before January 1, 1983, would be easy to determine. Lands for which the Secretary had approved purchase before that date might or might not be finally acquired and would take varying and unpredictable amounts of time to be finally acquired.

¶ 32. We conclude it is more reasonable to construe WIS. STAT. § 139.323(3) to mean that the land on which the sale occurred must have been acquired by the United States government in trust, rather than simply approved for purchase in trust, on or before January 1, 1983. This construction makes this condition congruent with the introductory language and provides a method for determining precisely which lands will qualify for the refund.

II. Supplementation of Record

¶ 33. In the circuit court the Nation moved for remand to the commission in order to submit evidence it had not previously submitted. The circuit court denied the motion because it concluded that the addi-

---

[10] WISCONSIN STAT. § 139.323 was enacted as part of the budget bill, 1983 Wis. Act 27, § 1502m., enacted July 1, 1983.

tional evidence did not create a material factual dispute and would not change its analysis.[11]

¶ 34.　The Nation argues that, although the meaning of "designated . . . trust land" is plain and warrants "a summary reversal of the Commission's decision," there are "material facts not in the record that render the Commission's decision unsupported by substantial evidence." The Nation describes the additional evidence it wishes to submit as showing that the property was "designated" trust land before January 1983.

¶ 35.　We conclude the circuit court properly denied the motion. The dispositive issue on this appeal is the meaning of "designated . . . trust land" in WIS. STAT. § 139.323(3). This is not a factual issue but a legal issue. We have determined, as did the circuit court, that this phrase means the date on which the United States government acquired the land in trust by formal acceptance under 25 C.F.R. § 151.14. The additional evidence does not create a factual dispute over when that occurred.

## CONCLUSION

¶ 36.　We conclude that the phrase "designated . . . trust land on or before January 1, 1983" in WIS. STAT.

---

[11] WISCONSIN STAT. § 227.56(1) provides:

**Additional evidence; trial; motion to dismiss; amending petition. (1)** If before the date set for trial, application is made to the circuit court for leave to present additional evidence on the issues in the case, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceedings before the agency, the court may order that the additional evidence be taken before the agency upon such terms as the court may deem proper. The agency may modify its findings and decision by reason of the additional evidence and shall file with the reviewing court the additional evidence together with any modified or new findings or decision.

§ 139.323(3) means that the United States government must hold the land in trust on or before that date. We also conclude that the United States government does not hold the land in trust until formal acceptance under 25 C.F.R. § 151.14 occurs. Because this did not occur with respect to the DeJope property until after January 1, 1983, the Nation is not entitled to a refund. Finally, we conclude the circuit court properly denied the Nation's motion for a remand to the Commission. Accordingly, we affirm.

*By the Court.*—Order affirmed.