QUESTIONS, INC., Plaintiff-Appellant,

v.

CITY OF MILWAUKEE, City of Milwaukee Common
Council, City of Milwaukee Common Council
Licensing Committee, City of Milwaukee Police
Department, Police Officer Kristyn Kukowski
and Edward Flynn, Defendants-Respondents.

Court of Appeals

*No. 2010AP707. Submitted on briefs April 7, 2011.
—Decided July 19, 2011.*

2011 WI App 126

(Also reported in 807 N.W.2d 131.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *David R. Halbrooks*, *Matthew D. Lerner* and *Michael S. Maistelman* of *Maistelman & Associates, LLC* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Grant F. Langley*, city attorney, and *Adam B. Stephens*, assistant city attorney.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J.  Questions, Inc. appeals a circuit court order affirming the City of Milwaukee Common Council's decision to renew Questions' Class B Tavern and Amusement License but to impose a twenty-five day suspension. Questions argues that the Common Council erred in:  (1) permitting the Milwaukee Police Department ("MPD") to stand in opposition to Questions' license renewal despite failing to file a written opposition pursuant to MILWAUKEE, WIS., ORDINANCE § 90–11–1-b (May 4, 2010);[1] (2) considering the police report synopsis submitted by the MPD even though it consisted entirely of uncorroborated hearsay; (3) failing to review and approve the Findings of Fact and Conclusions of Law drafted by the Milwaukee City Attorney's Office in violation of WIS. STAT. § 125.12(2)(b)3. (2009–10)[2] and MILWAUKEE, WIS., ORDINANCE § 90–11–2-c-2; and (4) failing to provide Questions with satisfactory notice of the

---

[1] All references to the City of Milwaukee Ordinances are to the May 4, 2010 version provided to the court by the parties.

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

Common Council's intention not to renew its license in violation of WIS. STAT. § 125.12(3). We disagree and affirm.

## BACKGROUND

¶ 2.   Questions is a night club owned and operated in the City of Milwaukee by Devon Reid. Questions operates with a Class B Tavern and Amusement License that the City requires be renewed on a yearly basis. When Reid applied to renew the tavern license for 2009, the City sent him a notice informing him that

> [t]here [was] a possibility that [his] application may be denied for the following reasons:
>
> See attached police report pending charges #30, 32 and 33 not previously considered. Neighborhood [o]bjections to racing and loud vehicles, loud music and noise, loitering, littering, illegal drug activity, cruising, fighting, prostitution, drunkenness, public urination, trespassing, vandalism, damage to private property, parking on private property, disturbing the peace, causing the normal flow of traffic on roadways to be impeded, excessive and inappropriate use of police resources, neighborhood problems due to mismanagement, endangering safety by exceeding capacity, shootings and gunshots, premises is operated in such a manner that it causes a public nuisance, and conduct which is detrimental to the health, safety, and welfare of the neighborhood.

The notice further informed Reid that a hearing on his application for renewal would be held on January 6, 2009, before the Common Council's Licenses Committee. Attached to the notice was a synopsis of seventy police reports compiled by the MPD, apparently detailing police contact with businesses owned by Reid, including Questions.

¶ 3. The January 6, 2009 hearing was postponed at Questions' request. However, two neighbors who appeared on January 6 were allowed to testify because they had been unaware of the change of date. David Ingvoldstad testified about an incident in which gunfire in front of his home resulted in bullets entering his living room and bedroom windows. Ingvoldstad testified that he believed the shots were related to patrons leaving Questions. He further testified that on nights when Questions was open for business there were problems with noise. Ingvoldstad's wife, Tinghong Lee, also testified about the night that bullets were fired and entered into their home and about noise in the neighborhood on nights when Questions was open.

¶ 4. The City sent Reid another notice, almost identical to the one above, notifying him of the new hearing date of January 26, 2009. The notice included an updated police report synopsis. The contacts involved a wide variety of issues from traffic congestion, noise, fighting, armed robbery, property theft, and shots fired.

¶ 5. The Licenses Committee reconvened on January 26, 2009. On that date, Reid appeared before the Licenses Committee in person and with counsel. Assistant City Attorney Robin Petterson was also present and represented the MPD in opposition to renewal; several MPD police officers also appeared as witnesses. Assistant City Attorney Bruce Schrimpf was also present to advise the Licenses Committee.

¶ 6. Alderman James Bohl, chairman of the Licenses Committee, asked that the police report synopsis be read into the record. Questions objected on the basis that the report was unreliable hearsay. The Committee noted Questions' objection, yet allowed the synopsis to be read into the record.

¶ 7. Several witnesses testified during the hearing, both for and against renewal, including multiple MPD police officers assigned to Questions' neighborhood. At the conclusion of the testimony, Alderman Ashanti Hamilton opined that while there were some issues regarding Questions' use of police services and its impact on the community, a case for non-renewal had not been made. Alderman Hamilton brought a motion for renewal with a twenty-five day suspension based upon the police report synopsis and testimony at the hearing. The motion carried on a four to one vote. Alderman Bohl commented on the police report synopsis stating: "[t]here are some items that I know that I just strongly won't consider" and "there are some items that I just won't necessarily regard."

¶ 8. Assistant City Attorney Schrimpf concluded the hearing by stating that the City Attorney's Office would prepare Findings of Fact and Conclusions of Law, which would be given to Questions for review. Questions asked that the entire Licenses Committee vote on and approve the findings before submitting them to the Common Council. Questions' request was denied and the meeting was adjourned.

¶ 9. The City Attorney's Office prepared the Findings of Fact and Conclusions of Law, which included forty-two of the seventy-four incidents listed in the police report synopsis, all of which occurred at or in the area surrounding Questions. On February 10, 2009, the Findings of Fact and Conclusions of Law were presented to the Common Council; all fifteen members of the Common Council, including all of the members of the Licenses Committee, were present. The members of the Common Council were asked: "Have the members of the Common Council read the Report and Recommendations of the Licenses Committee [to wit, the Findings

of Fact. and Conclusions of Law drafted by the City Attorney's Office] and the exceptions filed in this matter?" All of the members indicated that they had done so.[3] The Common Council then voted to adopt the Licenses Committee's recommendation and to renew Questions' tavern license but to impose a twenty-five day suspension.

¶ 10. On that same date, Questions filed a complaint in Milwaukee County Circuit Court alleging violations of its due process rights and the equal protection clauses of the Wisconsin and United States Constitutions, and requesting a temporary restraining order preventing the enforcement of the twenty-five day suspension until a full hearing on a temporary injunction could be held. The circuit court granted the temporary restraining order.[4]

¶ 11. Following numerous motions, the circuit court affirmed the Common Council's decision to renew Questions' license with a twenty-five day suspension, vacated the restraining order, and denied all of Questions' other requests for relief. Questions appeals.

---

[3] For reasons set forth in more detail later in this opinion, we look to the Common Council's minutes from the February 10, 2009 hearing to determine who was present and to determine that the members acknowledged receiving and reading the Findings of Fact and Conclusions of Law drafted by the City Attorney's Office. *See* CITY OF MILWAUKEE COMMON COUNCIL MINUTES FROM FEBRUARY 10, 2009 MEETING, http://milwaukee.legistar.com/DepartmentDetail.aspx?ID=1998&GUID=74273156–5389–46F3–9D09–3D850BDE32A1&Mode=MainBody (follow pdf link from February 10 minutes); *see also* WIS. STAT. § 902.01.

[4] The Honorable Jean DiMotto granted the temporary restraining order. Soon thereafter, due to judicial rotation, the case was transferred to the Honorable William Pocan, who entered all subsequent orders, including the final order affirming the Common Council.

## DISCUSSION

¶ 12. Before this court, Questions argues that: (1) the MPD's objection to Questions' license renewal during the January 26 hearing violated MILWAUKEE, WIS., ORDINANCE § 90–11-1-b; (2) the police report synopsis consisted entirely of uncorroborated hearsay and cannot constitute substantial evidence to support the Licenses Committee's factual findings; (3) the Licenses Committee's failure to review and approve the Findings of Fact and Conclusions of Law drafted by the City Attorney's Office violated WIS. STAT. § 125.12(2)(b)3. and MILWAUKEE, WIS., ORDINANCE § 90–11-2-c-2; and (4) the City did not provide Questions the requisite notice of the Licenses Committee's intention not to renew the license in violation of WIS. STAT. § 125.12(3). We address each contention in turn.

██

¶ 13. On certiorari review, we are limited to determining whether: (1) the governmental body's decision was within its jurisdiction; (2) the body acted according to law; (3) the decision was arbitrary or oppressive; and (4) the evidence of record substantiates its decision. *State ex rel. Ortega v. McCaughtry*, 221 Wis. 2d 376, 385, 585 N.W.2d 640 (Ct. App. 1998). We apply these standards *de novo* to the Common Council's decision, reviewing that decision and not the decision of the circuit court. *Kapischke v. County of Walworth*, 226 Wis. 2d 320, 327, 595 N.W.2d 42 (Ct. App. 1999).

## I. MPD's Alleged Failure to Provide Adequate Notice of Opposition

¶ 14. Questions first argues that the MPD's objection to Questions' license renewal at the January 26 hearing violated MILWAUKEE, WIS., ORDINANCE § 90–11-1-

b. However, we conclude that not only did Questions forfeit its right to raise this issue when it failed to raise it before either the Common Council or the circuit court, but that § 90–11–1-b was not violated.

██

¶ 15. First, we conclude that Questions forfeited its right to raise this issue on appeal when it failed to raise it before either the Common Council or the circuit court. *See State ex rel. Olson v. City of Baraboo Joint Review Bd.*, 2002 WI App 64, ¶ 23, 252 Wis. 2d 628, 643 N.W.2d 796 ("To preserve an issue for appeal, the circuit court must be apprised of a party's objection and the basis for it."). Questions asserts in its appellate brief that before the Licenses Committee it "objected to the MPD's appearance in objection to renewal because the MPD had not filed an objection." In doing so, Questions cites to the following excerpt from the January 26 hearing transcript:

[QUESTIONS' COUNSEL]: ...

Now, the reason for this objection goes back to a few minutes ago when you were going to ask Sergeant Ulickey to read - - read the police report [synopsis]. If the police department is objecting, I object to their reading in something as factual, and I would ask that it not be read in but it be presented as evidence that we can cross-examine. The reason is, I will tell you, that there - - I mean, I can point to you to an absolute factual inaccuracy in this. A representation by the police department that is completely wrong. Now, how many errors are in here? I don't know. I suspect we'll find out over the next several hours. But what I do know is, is that I object, given that the police department has now suggested that it wants to take away the license from Questions. That Sergeant Ulickey's reading in is, as routine, is now inappropriate, and it should be pre-

sented by Mr. Petterson through testimony, because anything short of that, if the police department - - The police department has no firewall. They can't wear two hats. They are the police department. They all report to the Chief. So I object to the reading, and I ask that propriety and ethics would dictate that Mr. Petterson present this as part of the hearing.

Contrary to Questions' assertion, that portion of the January 26 hearing transcript cited by Questions does *not* demonstrate that Questions objected to the MPD's appearance against renewal on the grounds that the MPD did not provide notice. Rather, Questions objected to the admission of the police report synopsis on hearsay grounds and to the City Attorney's Office's role in representing both the Common Council, a neutral party, and the MPD, which appeared in opposition.[5] Nor did our review of the hearing transcript reveal that Questions ever objected to the MPD's appearance pursuant to MILWAUKEE, WIS., ORDINANCE § 90–11–1-b.[6]

¶ 16. Nor did Questions raise its MILWAUKEE, WIS., ORDINANCE § 90–11–1-b argument before the circuit court. Before the circuit court, Questions argued that the notice the City provided to Questions, pursuant to MILWAUKEE, WIS., ORDINANCE § 90–11–2 (as opposed to

---

[5] Questions has abandoned its objection to the role of the City Attorney's Office on appeal. *See Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (Issues not raised or briefed on appeal are deemed abandoned.).

[6] We caution Questions' counsel that SCR 20:3.3(a)(1) requires candor to the tribunal and prohibits counsel from knowingly "mak[ing] a false statement of fact . . . to a tribunal." Counsel's failure to abide by the Wisconsin Supreme Court's ethical rule frustrates the judicial process and is disrespectful to this court.

§ 90–11–1-b, the ordinance argued on appeal), did not properly notify Questions of the MPD's opposition to license renewal.[7] Questions contended that § 90–11–2's mandate that notice include a statement of the reasons for non-renewal required the City to notify Questions of the MPD's objection. *See* § 90–11–2-a-2–c. Nowhere did Questions argue that the MPD was required to file notice of its opposition pursuant to § 90–11–1-b, as it argues here.[8]

---

[7] Questions has abandoned this claim on appeal. *See Reiman Assocs.*, 102 Wis. 2d at 306 n.1 (Issues not raised or briefed on appeal are deemed abandoned.).

[8] We again note Questions' counsel's failure to abide by SCR 20:3.3(a)(1), requiring candor to the tribunal, when discussing the circuit court's decision. In an apparent effort to hide the fact that Questions raises this claim for the first time on appeal, counsel craftily states that the circuit court held that "notice of an objection by the MPD prior to the renewal hearing is not required" under MILWAUKEE, WIS., ORDINANCE § 90–11, omitting the subsection under which the circuit court considered the question. This court is not so easily deceived. We note that our review of the circuit court's ruling shows that it referenced MILWAUKEE, WIS., ORDINANCE § 90–11–2, NOT Milwaukee, Wis., Ordinance § 90–11–1-b. Questions argues in its appellate brief that the circuit court simply misunderstood Questions' argument, saying: "The [circuit] court misinterpreted § 125.12 Wis. Stats., CMO § 90–11 and Questions' objection. Questions' objection was not to testimony being presented without notice, but to the MPD being allowed to object to renewal without following the requirements of state statute and city ordinances." In so saying, Questions was attempting to argue to this court that although it had raised § 90–11–1-b to the circuit court, the circuit court had missed its argument. However, our review of Questions' pleadings and briefs before the circuit court reveal that Questions never raised § 90–11–1-b to that court and is not being candid with this court in claiming otherwise; instead, Questions attempts to blame the circuit court for misinterpreting an argument Questions did not make.

¶ 17.   Furthermore, even if Questions had properly raised its argument before the Common Council and the circuit court, its claim would fail. As we have repeatedly held, statutory interpretation begins with the plain language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. However, the plain meaning is seldom determined in a vacuum; statutory language should be "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." *Id.*, ¶ 46.

¶ 18.   Here, the plain language of MILWAUKEE, WIS., ORDINANCE § 90–11–1-b does not support Questions' claim. Section 90–11–1-b states in pertinent part:

> A written objection to the renewal of the license *may* be filed with the city clerk by any interested person provided that the objection is filed at least 45 days prior to the date on which the license expires and sets forth specific charges against an applicant which could form a basis for nonrenewal of the license. If a written objection is filed, or if a determination is made that the applicant no longer meets the licensing qualifications, the application, except as provided in par. c, shall be forwarded to the licensing committee for a hearing on whether the application should be recommended for approval or denial to the common council.

(Emphasis added.) We have previously held that "[t]he word 'may' in a[n ordinance] is generally construed as permissive unless a different construction is required by the statute to carry out the clear intent of the legislature." *Heritage Farms, Inc. v. Markel Ins. Co.*, 2011 WI App 12, ¶ 9, 331 Wis. 2d 64, 793 N.W.2d 896. In other words, the ordinance permitted, but did not

require, the MPD to file a written objection. *See* MILWAUKEE, WIS., ORDINANCE § 90–11–1-b.

¶ 19.  We also note that MILWAUKEE, WIS., ORDINANCE § 90–11–1-b does not require a party to file a written objection to renewal before objecting in person at a hearing. In fact, a written objection merely triggers a hearing, at which any number of interested individuals are permitted to testify both for and against renewal. *See* MILWAUKEE, WIS., ORDINANCE § 90–11–2-b. Questions' contention to the contrary is wholly without merit and ignores the plain language of the ordinance.

## II.  Admissibility of Police Report Synopsis

¶ 20.  Next, Questions submits that there was no substantial evidence to support the Common Council's decision to suspend Questions' tavern license for twenty-five days because the police report synopsis consisted of uncorroborated hearsay that was controverted by in-person testimony. We disagree.

¶ 21.  To begin, even assuming, without deciding, that the police report synopsis is hearsay, the Wisconsin Statutes only prohibit the admission of hearsay evidence from "proceedings in the courts of the state of Wisconsin." *See* WIS. STAT. §§ 901.01, 908.02 & 911.01. The Common Council and its Licenses Committee are not courts and, therefore, are not bound by the statutory rules of evidence. As such, the synopsis was properly admitted.

¶ 22.  In support of its assertion that the police report synopsis was not sufficient substantial evidence to support the Common Council's decision, Questions relies

on *Gehin v. Wisconsin Group Insurance Board*, 2005 WI 16, 278 Wis. 2d 111, 692 N.W.2d 572. Questions' reliance on *Gehin* is misplaced. *Gehin* stands for the proposition that an administrative agency cannot rely on *uncorroborated* written hearsay *alone* when that hearsay is *otherwise controverted by in-person testimony. Id.*, ¶ 4. Here, the Licenses Committee properly relied on the synopsis because it was corroborated by circumstantial evidence in the record, the Licenses Committee relied on other evidence in addition to the synopsis, and the forty-two incidents summarized in the synopsis that were ultimately adopted by the Committee were not each controverted by other evidence in the record.

¶ 23.  Several witnesses testified to circumstantially corroborate the forty-two incidents summarized in the police report synopsis that were adopted by the Licenses Committee. One Milwaukee police officer, assigned to the tavern enforcement car, testified that parking, congestion, and noise were all problems in the area around Questions, particularly at bar time. He testified that he had

> seen several very intoxicated persons - - patrons leaving. There are a lot of situations regarding resisting arrest, where my partner and I can specifically remember assisting other officers taking somebody into custody because of this disorderly behavior. The littering, the debris, broken glass and bottles on private lots and public streets - - streets and sidewalks that were left over.

The officer further testified that property crimes and armed robberies in the area of Questions increased around closing time, and that he had personally smelled marijuana when walking into the club, which indicated to him that illegal drug use occurred within Questions.

¶ 24. Two citizen witnesses who lived near Questions, Ingvoldstad and Lee, also testified generally about conditions in the neighborhood on nights when Questions was open. Ingvoldstad testified that one night he heard gunfire and bullets entered through both his bedroom and living room windows; he believed that the incident was "directly related to the patrons that [were] leaving [Questions]." Ingvoldstad testified that it was often "a free for all out" in front of Questions, that he had concerns about "the traffic or the way the patrons behave and the loud music that comes from the vehicles," that traffic often blocked the alleyway to his home, and that "we rarely get to bed until after things have cleared out." Lee, Ingvoldstad's wife, also testified about the noise at Questions, stating:

> at nights when there's no Questions business, I can hear the crickets outside. It's very, very quiet on North Avenue. So whenever Questions is open, I know it's open because there's noise. Sometimes it's happy noise. I have experienced women who, having had a good time at the club, they came out, they said we'll meet again, this was good, let's do it again, but oftentimes it's fighting.

¶ 25. Such evidence sufficiently corroborates the forty-two incidents set forth in the police report synopsis that were adopted by the Licenses Committee, detailing traffic congestion, noise, violent crime, drugs, and shots fired, and provides additional evidence to support the Common Council's decision to temporarily suspend Questions' tavern license, such that the Common Council was not relying on the synopsis alone.

¶ 26. Questions argues that the police officer's testimony (and that of several other police officers who testified), as well as the testimony of Ingvoldstad and Lee, cannot corroborate the police report synopsis because they did not testify about specific incidents listed

669

in the synopsis; rather, they testified generally about their experiences in the neighborhood surrounding Questions. However, that is simply not so. The testimony presented sufficiently demonstrated that traffic congestion, property crime, fighting, and occasional gunfire, as set forth in the synopsis, were all at times a concern. That there was no testimony directly related to each of the forty-two incidents listed in the synopsis that were adopted by the Licenses Committee simply goes toward the weight the Committee chose to give to each incident.

¶ 27. Furthermore, while Questions contends that it "offered evidence which contradicted virtually each and every incident contained [i]n the [s]ynopsis," our review of the record revealed no such evidence. Instead, in those excerpts of the January 26 transcript cited by Questions, Questions' counsel merely provided context for the forty-two incidents set forth in the synopsis that were adopted by the Licenses Committee and argued the weight that the Committee should give to each, never addressing the remainder of the items in the synopsis. Counsel never denied the veracity of each of the forty-two incidents addressed. For instance, item number thirty-six in the synopsis stated as follows:

On 02/01/08 at 12:44 am, Milwaukee police were dispatched to 3041 W North Avenue for an Arm[ed] Robbery complaint. Police spoke with the victim who stated she was denied entry into the Questions Club due to an expired ID card. The victim began to walk away from the tavern when she was approached by two males armed with guns demanding her property. The victim stated she ran back to security at the tavern and that is when she heard several gunshots fired. While investigating this Arm[ed] Robbery complaint, another subject approached officers stating he was robbed at gunpoint in the same area. Reports were filed in both complaints.

In response, at the January 26 hearing, counsel for Questions stated:

Item 36, an alleged patron was robbed after leaving Questions. It should be noted that the neighborhood is a very high crime area and there's no indication that the perpetrators had any connections to the establishment.

Such statements made by counsel are not testimony and do not controvert the truth of the items in the synopsis. As such, the Common Council was free to consider the synopsis and to give those incidents listed therein whatever weight it deemed appropriate.[9]

## III. The Licenses Committee's Findings of Fact and Conclusions of Law

■

¶ 28.   Questions argues that the Findings of Fact and Conclusions of Law submitted to the Common Council by the Licenses Committee failed to comport with the requirements of WIS. STAT. § 125.12(2)(b)3. and MILWAUKEE, WIS., ORDINANCE § 90–11–2-c-2 because they were drafted by the City Attorney's Office without input, review, or approval by the Licenses Committee, and they are inconsistent with statements made by Alderman Bohl during the January 26 hearing. Because at the outset of the February 10 Common Council meeting each member of the Licenses Committee ac-

---

[9] Questions only argues that the police report synopsis alone does not constitute substantial evidence upon which the Common Council could base its decision pursuant to *Gehin v. Wisconsin Group Insurance Board*, 2005 WI 16, 278 Wis. 2d 111, 692 N.W.2d 577. As set forth above, *Gehin* is inapplicable here because there was evidence circumstantially corroborating the synopsis on which the Common Council could also rely, and the incidents set forth in the synopsis were not controverted by in-person testimony. Consequently, we do not address the broader question of whether there was substantial evidence upon which to base the Common Council's decision because the parties do not brief the issue.

knowledged receiving and reviewing the Findings of Fact and Conclusions of Law, we affirm.

¶ 29. WISCONSIN STAT. § 125.12(2)(b)3. states, in pertinent part, that "[i]f the hearing is held before a committee of a city council, the committee shall submit a report to the city council, including findings of fact, conclusions of law and a recommendation as to what action, if any, the city council should take with respect to the license." MILWAUKEE, WIS., ORDINANCE § 90–11–2-c-2 repeats § 125.12(2)(b)3.'s requirements, using the same language as the statute.

¶ 30. Here, following the January 26 hearing, the City Attorney's Office drafted the Findings of Fact and Conclusions of Law and submitted them to the chairman of the Licenses Committee, Alderman Bohl, who signed them, albeit, electronically. At the Common Council meeting when the Findings of Fact and Conclusions of Law were presented to the Common Council, all of the members of the Common Council, including all of the members of the Licenses Committee, were asked if they had "read the Report and Recommendations of the Licenses Committee and the exceptions filed in this matter."[10] All members indicated that they had done so.

---

[10] We note, with displeasure, that while the City argues that the members of the Licenses Committee expressly acknowledged during the Common Council meeting that they had read the Findings of Fact and Conclusions of Law drafted by the City Attorney's Office, the City does not provide a cite to the record for its assertion. Nor were we able to find such evidence in the record. The City's failure to cite to the record (or to include in the record, as far as we can tell) the fact on which its argument hinges would in most instances be the death knell to its response. *See* WIS. STAT. §§ 809.19(3)(a)2. & (1)(e); *Nelson v. Schreiner*, 161 Wis. 2d 798, 804, 469 N.W.2d 214 (Ct. App. 1991). However, we note with interest that Questions did not rebut the City's

¶ 31. In other words, on the record before the Common Council, all members of the Licenses Committee acknowledged reading the Findings of Fact and Conclusions of Law drafted by the City Attorney's Office and no member of the Committee spoke up to say that they did not approve of the document as drafted. Each committee member's acknowledgement of receipt and failure to object is sufficient to demonstrate that the document accurately represented the Committee's findings and recommendations. Questions points to no statute or ordinance stating that more needed to be done to secure the committee members' approval.

¶ 32. Questions makes much of the fact that, during the January 26 hearing, Alderman Bohl expressly stated that there were some facts included in the police report synopsis "that I know I just strongly won't consider" and that "there are some items that I just won't necessarily regard." However, despite Questions' misrepresentation to this court that the Licenses Committee adopted the synopsis in its entirety, the Committee ultimately left out thirty-two of the incidents set forth in the report, some of which could have been the items with which Alderman Bohl was concerned.

¶ 33. Additionally, there was nothing preventing Alderman Bohl from reconsidering his statements be-

assertion in its reply brief by claiming that the members of the Licenses Committee failed to acknowledge reading the Findings of Fact and Conclusions of Law at the Common Council meeting. Therefore, in the interests of justice, this court conducted its own independent research, undertaken with scarce judicial resources, and uncovered the minutes from the February 10, 2009 Common Council meeting outside of the record. Those minutes support the City's assertion. We take judicial notice of the February 10, 2009 Common Council meeting minutes as a matter of public record. *See* Wis. Stat. § 902.01.

fore the Licenses Committee presented its findings to the Common Council. That Alderman Bohl approved of the final draft on the record before the Common Council is sufficient to satisfy the statute and ordinance. "[T]he committee . . . submit[ted] a report to the city council, including findings of fact, conclusions of law and a recommendation as to what action, if any, the city council should take with respect to the license," and the report was approved by all members of the Committee on the record. *See* WIS. STAT. § 125.12(2)(b)3.; MILWAUKEE, WIS., ORDINANCE § 90–11–2-c-2. No more is required.

## IV. Adequacy of Notices issued by the City pursuant to WIS. STAT. § 125.13(3) and MILWAUKEE, WIS., ORDINANCE § 90–11–2

¶ 34.   Finally, Questions argues that the notices the City sent to Questions, informing it of the January 6 and January 26 hearings, failed to comply with WIS. STAT. § 125.12(3) and MILWAUKEE, WIS., ORDINANCE § 90–11–2 because the notices:   (1) did not properly inform Questions of the Licenses Committee's "intention not to renew"; and (2) did not include "neighborhood objections." Questions' claim is entirely without merit.

¶ 35.   WISCONSIN STAT. § 125.12(3) states, in pertinent part:

REFUSALS BY LOCAL AUTHORITIES TO RENEW LICENSES. A municipality issuing licenses under this chapter may refuse to renew a license for the causes provided in sub. (2) (ag). Prior to the time for the renewal of the license, the municipal governing body or a duly authorized committee of a city council shall notify the licensee in writing of the municipality's intention not to renew the

674

license and provide the licensee with an opportunity for a hearing. The notice shall state the reasons for the intended action . . . .

MILWAUKEE WIS., ORDINANCE § 90–11–2 likewise requires that

a-1. . . . If there is a possibility that the committee will not renew a license, a motion should be entertained to hold the application in committee and instruct the city clerk to forward proper notice to the applicant . . . .

a-2. Prior to the date set for the hearing, the city clerk's office shall forward notice to the applicant which shall contain:

. . . .

a-2–b. A statement of the common council's intention not to renew the license or suspend the license in the event any objections to renewal are found to be true.

¶ 36.  Questions clings to the phrase, found in both the statute and the ordinance, that the notice must inform the applicant of the Common Council's "intention not to renew" the license, and submits that the notices sent by the City to Questions were insufficient because they merely stated that "[t]here is a *possibility* that your application may be denied." (Emphasis added.) Questions assertion ignores common sense and the plain language of the statute. *See State ex rel. Reimann v. Circuit Court for Dane Cnty.*, 214 Wis. 2d 605, 617, 571 N.W.2d 385 (1997) (When interpreting a statute, "we must attempt 'to find the common sense meaning and purpose of the words employed in the statute.' " (citation omitted)).

¶ 37.  While WIS. STAT. § 125.12(3) and MILWAUKEE, WIS., ORDINANCE § 90–11–2 do both require the Common Council to notify the applicant of the Common Council's

"intention not to renew," the statute and ordinance also require that the notice inform the applicant of a hearing at which the matter will be affirmatively decided. As the matter cannot be affirmatively decided before the hearing, it is of course only a possibility that the applicant's license will not be renewed at the time the notice is sent. If there was no possibility that the hearing would persuade the Common Council that the license should be renewed, and in fact the Common Council's intent to deny was not a mere possibility but affirmatively set in stone, Questions would be before us arguing that its due process rights had been violated. In other words, by informing Questions that "[t]here is a possibility that your application may be denied," the Common Council properly informed Questions of its "intention not to renew."

¶ 38. As for Questions second assertion, that the City's notices of the January 6 and January 26 renewal hearings were inadequate because they did not include any written neighborhood objections submitted pursuant to MILWAUKEE, WIS., ORDINANCE § 90–11–1-b, we conclude that such written objections were not necessary to trigger a hearing. The fourteen page police report synopsis properly notified Questions of the basis for the possibility of non-renewal or suspension. Questions provides no citations that suggest greater specificity is required.

*By the Court.*—Order affirmed.