COURT OF APPEALS
DECISION
DATED AND FILED

October 11, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2021AP1432**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020CV3154

**IN COURT OF APPEALS
DISTRICT I**

FAMILY DOLLAR STORES OF WISCONSIN LLC AND LONNIE MCCAFFETY, AGENT,

  PETITIONERS-APPELLANTS,

 V.

CITY OF MILWAUKEE AND CITY OF MILWAUKEE COMMON COUNCIL,

  RESPONDENTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: HANNAH C. DUGAN, Judge.  *Reversed and cause remanded with directions*.

Before Brash, C.J., Dugan and White, JJ.

¶1      BRASH, C.J.  Family Dollar Stores of Wisconsin LLC and Lonnie McCaffety (collectively "Family Dollar") appeal the order of the circuit court denying its writ of certiorari relating to the decision of the City of Milwaukee and the City of Milwaukee Common Council (collectively "the City") not to renew its

Food Dealer and Weights & Measures licenses. Family Dollar argues that the City's notice regarding the possibility of nonrenewal of the licenses was deficient, and that the hearings on this matter were not fair and impartial, in violation of its due process rights. Family Dollar further argues that the City's decision was arbitrary, oppressive, and unreasonable, representing its will and not its judgment.

¶2 For reasons set forth below, we agree that the City's decision not to renew Family Dollar's licenses was improper. We therefore reverse the City's decision.

## BACKGROUND

¶3 Family Dollar has operated its store on North 27th Street in Milwaukee for sixteen years. The store carries a wide variety of food items, and food sales account for approximately one-third of Family Dollar's revenue for the store. The store is located in a predominantly low-income area of Milwaukee, and many of its customers are beneficiaries of the Supplemental Nutrition Assistance Program (SNAP). Additionally, the store is located in what is considered to be a high-crime area of Milwaukee.

¶4 The record indicates that Family Dollar had issues relating to loitering on the property, littering, and complaints about the maintenance of the store building. Furthermore, in August 2019, Family Dollar received a notice from the Milwaukee Police Department (MPD) that the store had been designated a Chronic Nuisance Premises under the Milwaukee Code of Ordinances (MCO) 80-10. That notice listed four incidents that had occurred in July and August of 2019. Three of those incidents were reported by Family Dollar employees: two incidents of shoplifting, and one incident of a customer damaging items and attempting to take the firearm from Family Dollar's security guard. The fourth incident involved a

citation for public drinking that was issued after an individual was stopped by police officers on store property.

¶5    In response to that nuisance designation notice, Family Dollar submitted a plan to MPD to abate the nuisance activities occurring at the store. That plan was reviewed and accepted by MPD in September 2019. There have been no further citations issued to Family Dollar for the store since its abatement plan was implemented.

¶6    In February 2020, Family Dollar submitted an application to renew its licenses to the City. Family Dollar subsequently received a notice from the City in April 2020 that its renewal application may be denied. The notice directed Family Dollar to "[s]ee attached police report or correspondence" for specific information regarding the reasons for possible nonrenewal. The only item that appears to have been attached was an email from Keith Stanley of the Near West Side Partners community group to Alderman Robert Bauman, who represents the 4th District, where the store is located. The email, dated April 2019—prior to the nuisance designation notice that was issued by MPD and the responsive abatement plan implemented by Family Dollar—discussed issues such as trash littering the property, a dirty façade and windows, hand-written signs in the windows, dirty floors inside the store, and leaning shelving units.

¶7    A hearing before the Licenses Committee on the matter was held in May 2020; it was held virtually, due to the COVID-19 pandemic.[1] Stanley, from

---

[1] Family Dollar makes numerous references in its briefs to a video of the hearings before the Licenses Committee and the Common Council. This video was apparently submitted to and reviewed by the circuit court; however, it was not included in the record filed with this court. "We are bound by the record as it comes to us." *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26, 496 N.W.2d 226 (Ct. App. 1993). Thus, the information in this opinion regarding the hearings was taken from the circuit court's decision and other documents in the record that describe the hearings.

the Near West Side Partners group, testified in opposition to renewing Family Dollar's licenses. He stated that the store was "a hub of shoplifting, loitering, fighting, and other nuisance activity," calling it "a 'blight' on 27th Street[.]" He further claimed that management for the store was "non-responsive to concerns." However, Stanley acknowledged that there was "value to the store" and that it was "a resource to the community."

¶8 The district captain for MPD at that time, Jeffrey Norman, also testified at the hearing. He stated that the store was "a drain on police resources" and that Family Dollar "did not communicate well" with MPD. Alderman Bauman, who was not a member of the Licenses Committee but was present at the hearing in his capacity of alderman for that district, testified that he did not support renewal of the licenses due to its history of "nuisance activity." Alderman Bauman also stated that a different store nearby offered the same products as Family Dollar, although a letter to the Licenses Committee from Stanley submitted a few days before the hearing acknowledged that the Family Dollar store provides "low[-]priced goods that are not readily available any other place in our community."

¶9 Management for Family Dollar—two district managers and the new regional manager—testified as well. They stated that the store had undergone "a number of improvements at significant expense" over the past year, noting that there were some restrictions since Family Dollar does not own the building. Nevertheless, they indicated that they would continue to make improvements to the store and were "happy to work with area residents" regarding any further issues that arose.

¶10    A motion for nonrenewal of the licenses was passed by the Licenses Committee by a vote of 4-1. The matter was then forwarded to the Common Council.

¶11    A hearing by the Common Council was held at the end of May 2020. Family Dollar raised due process concerns based on being denied the opportunity to cross-examine the witnesses who testified in favor of nonrenewal. It also requested an alternative to the nonrenewal of its licenses, such as a progressive penalty. However, the Common Council accepted the recommendation of the Licenses Committee for nonrenewal by a vote of 9-6. Alderman Bauman participated in that vote as a member of the Common Council.

¶12    Family Dollar then filed a petition for writ of certiorari with the circuit court seeking reversal of that decision. It argued that its due process rights were violated when it was denied the opportunity to cross-examine the witnesses who appeared in favor of nonrenewal. It further asserted that there was insufficient evidence to support nonrenewal, and that the decision was arbitrary, based on Alderman Bauman's "anti-national chain store bias[.]"

¶13    In October 2020, the parties stipulated to a remand of the matter to the City for a new hearing that allowed for "full and complete cross[-]examination of all testifying witnesses."[2] A new hearing before the Licenses Committee was scheduled for November 2020.

---

[2] The circuit court also granted Family Dollar a temporary injunction allowing for its Licenses to remain valid until such time that the court could decide this matter on the merits. Family Dollar's motion to stay that order was granted, and it remained in effect while this appeal was pending.

5

¶14 A notice for that remand hearing was provided to Family Dollar. Attached to that notice was the August 2019 letter from MPD regarding the nuisance designation for the store, and a copy of the letter notifying Family Dollar that its abatement plan to address the nuisance issues had been accepted by MPD. Also attached to the notice was a copy of the same April 2019 email from Stanley to Alderman Bauman that was attached to the original notice for the first hearing.[3]

¶15 At the remand hearing in November 2020, the district captain for MPD at that time testified regarding the number of calls MPD had received relating to the store since January 2020. He explained that some of these were "business checks," which is when an officer checks on the store to ensure there are no issues, either by entering the store and talking to employees or simply driving by. He also stated that the nuisance designation had been lifted from the store. However, the district captain at the time of the first hearing, Norman—who had been promoted to assistant chief at the time of the remand hearing—testified that the number of calls MPD received relating to the store was still "higher than one would expect."

¶16 The same managers from Family Dollar who testified at the first hearing testified at the remand hearing, along with the new store manager. They stressed that they took the concerns about the store seriously, and emphasized their willingness to work with MPD and community groups regarding improvements.

---

[3] The notice included several other attachments, such as a letter from Stanley to the Licenses Committee members dated May 6, 2020—prior to the first committee hearing—outlining various concerns the group had with the store, which were similar to those addressed in the nuisance designation letter from MPD. Also included with the notice was a map of the area, marked to indicate where other businesses with food licenses were located. Family Dollar asserts that this information should not have been included in the record before this court because it objected to this information being presented at the remand hearing, since it was available at the first hearing but never provided to Family Dollar, and that objection was sustained. We are unable to confirm those events since video of the hearings was not included with the record, as previously noted, and information on this issue does not appear elsewhere in the record.

They also contended that many of the police calls actually stemmed from incidents relating to a tavern located near the store, whose patrons engage in drug use and fights in the Family Dollar parking lot. The store manager, who had only been with the store for six months, testified that she had started training the staff on how to handle "security issues." The management staff all testified as to the improvements that had been made to the store itself to address the issues raised, although one manager observed that the corporation which owns Family Dollar was unlikely to invest in further improvements for the store with its licenses in jeopardy. Nevertheless, the regional manager stated that she had "walked the store" on October 1, 2020, with management, the Department of Neighborhood Services, and MPD, and there were "no code violations or safety issues."

¶17 Alderman Bauman again testified that he was not in favor of renewing Family Dollar's licenses. He also again asserted that there was another grocery store in the area for residents to patronize. He further commented that Family Dollar "could care less about how this store is operating." Stanley echoed that sentiment during his testimony, stating that Family Dollar had been "unresponsive and not committed to be involved in the community."

¶18 Family Dollar had the opportunity to cross-examine each witness who testified in opposition to the renewal of the licenses at the remand hearing. Additionally, counsel for Family Dollar emphasized management changes at Family Dollar in the past six months, which he asserted had provided more stability for the store. Counsel further advocated that a penalty short of nonrenewal was a more appropriate remedy, based on the evidence. Nevertheless, the Licenses Committee again voted to recommend nonrenewal by a vote of 4-0;[4] the Common Council

---

[4] Alderwoman Milele Coggs was excused from the proceedings.

subsequently followed that recommendation, voting in favor of nonrenewal by a vote of 13-0 with two abstentions. Alderman Bauman again participated in that vote.

¶19 The matter then returned to the circuit court[5] for review. Family Dollar asserted that the decision denying renewal of its licenses was arbitrary, oppressive and unreasonable, and contrary to the evidence. Family Dollar further argued that its due process rights were violated because the notices from the City regarding the hearings were insufficient, and because of technological issues relating to the virtual format of the hearings.

¶20 The circuit court rejected Family Dollar's arguments. It found that the notices were sufficient, and that any technical "glitches" that occurred during the hearings did not affect Family Dollar's opportunity to be heard. The court also rejected Family Dollar's argument that the Licenses Committee, in "delegating its fact-finding responsibilities to Alderman Bauman," had not asked "meaningful questions" during the hearings. The court determined that Family Dollar "had the opportunity to ask meaningful questions during its own witnesses' testimonies," and thus had not established that its due process rights were violated in that regard.

¶21 Furthermore, the circuit court found that there was sufficient relevant evidence upon which the Licenses Committee and the Common Council relied for their nonrenewal recommendation and decision, and therefore those actions were not arbitrary, oppressive, or unreasonable. This appeal follows.

---

[5] The order remanding this matter to the City was issued by the Honorable Jeffrey A. Conen; the decision ultimately denying Family Dollar's petition for writ of certiorari was issued by the Honorable Hannah C. Dugan.

## DISCUSSION

¶22    Judicial review by certiorari of the final decision of a municipal board is permitted pursuant to WIS. STAT. § 68.13 (2019-20).[6]  On certiorari review, this court is "limited to determining whether:  (1) the governmental body's decision was within its jurisdiction, (2) the body acted according to law, (3) the decision was arbitrary or oppressive, and (4) the evidence of record substantiates its decision." *State ex rel. Bruskewitz v. City of Madison*, 2001 WI App 233, ¶11, 248 Wis. 2d 297, 635 N.W.2d 797.  We review *de novo* the municipality's decision, not the decision of the circuit court.  *Id.*

¶23    Furthermore, on certiorari review "there is a presumption of correctness and validity to a municipality's decision."  *Ottman v. Town of Primrose*, 2011 WI 18, ¶48, 332 Wis. 2d 3, 796 N.W.2d 411.  The petitioner bears the burden of overcoming this presumption.  *Id.*, ¶50.

### *Due Process Claims*

¶24    We first address Family Dollar's due process arguments, which fall under the second category of review, acting according to law.  *See Marris v. City of Cedarburg*, 176 Wis. 2d 14, 24, 498 N.W.2d 842 (1993) ("[t]he phrase 'acted according to law' has been interpreted as including 'the common-law concepts of due process and fair play'" (citations omitted)).  Family Dollar raises two due process concerns:  that the notices for the hearings provided by the City were insufficient, and that the hearing was not fair and impartial.  We agree with Family Dollar that its due process rights were violated in both instances.

---

[6] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶25    First, with regard to the sufficiency of the notices, the City is required to provide "written notice of the possibility of non[]renewal[.]" *See* MCO 85-3.1.a. That written notice must include, among other things, "[a] statement of the specific reasons for … non[]renewal." *See* MCO 85-3.1.b-3. "[T]he rules of construction for statutes have been long held applicable to the construction of municipal ordinances[.]" ***State ex rel. B'nai B'rith Found. of U.S. v. Walworth Cnty. Bd. of Adjustment***, 59 Wis. 2d 296, 308, 208 N.W.2d 113 (1973). The purpose of statutory or ordinance construction is to determine the intent of that statute or ordinance, which is "primarily deduced from the language" of that statute or ordinance. *See* ***Fond Du Lac Cnty. v. Town of Rosendale***, 149 Wis. 2d 326, 332, 440 N.W.2d 818 (Ct. App. 1989). Statutory and ordinance construction are questions of law that we review *de novo*. ***DOR v. River City Refuse Removal, Inc.***, 2007 WI 27, ¶26, 299 Wis. 2d 561, 729 N.W.2d 396.

¶26    The notices provided by the City to Family Dollar, for both the initial hearing and the remand hearing of the Licenses Committee, were essentially form letters. They contained the requisite statement of the possibility of nonrenewal, as well as the dates and times of the hearings. Additionally, both notices provided a list of the various types of evidence the Committee might consider, such as "failure of the applicant to meet municipal qualifications," pending criminal charges, or municipal offenses which "substantially relate" to the licenses at issue.

¶27    The notices further indicated that if the "activities of the applicant" involved a licensed premises, the Licenses Committee may consider additional evidence of whether "the premises tends to facilitate a public or private nuisance or has been the source of congregations of persons which have resulted in" certain crimes or ordinance violations, including theft, disturbing the peace, drinking in public, excessive littering, loitering, and other conduct that "reasonably relates to

the public health, safety and welfare[.]" Another factor that may be considered is the "failure to comply with the approved plan of operation." Nothing in the body of this list, however, referenced Family Dollar as specifically involved in any of these concerning behaviors.

¶28 Both notices to Family Dollar also stated that there were "attached police report[s] or correspondence" relating to the applicant. However, there were no police reports attached to the initial hearing notice; the only attachment was the email from Stanley to Alderman Bauman, dated prior to the store being designated a nuisance property. That same email was attached to the remand hearing notice, along with the August 2019 letter from MPD regarding the nuisance designation for the store. That letter listed the four incidents occurring in July and August of 2019 to which MPD had responded, as discussed above—two instances of shoplifting reported by employees, an unruly customer in the store also reported by employees, and public drunkenness outside the store—which had apparently precipitated the store being designated a nuisance. Also attached to the remand hearing notice was a copy of the letter notifying Family Dollar that its abatement plan to address the nuisance issues had been accepted by MPD.

¶29 We fail to see how these notices, with these attachments, constituted sufficient notice to Family Dollar of the evidence the Licenses Committee was going to consider at the hearings. There was no explanation of the "municipal qualifications" that Family Dollar was required to meet and whether they failed to meet them. Additionally, the attachments included were related to issues that had already been addressed by Family Dollar, and there had been no further citations issued in the time frame between the approval of its abatement plan by MPD and the hearings. Moreover, there were no other details specific to Family Dollar describing conduct or activities that were of concern to the Committee. In contrast,

11

this court previously held in ***Questions, Inc. v. City of Milwaukee***, 2011 WI App 126, ¶¶2, 4, 38, 336 Wis. 2d 654, 807 N.W.2d 131, that a "fourteen page police report synopsis" relating to "a wide variety of issues from traffic congestion, noise, fighting, armed robbery, property theft, and shots fired" in and around a night club seeking to renew its Tavern and Amusement License was sufficient notification to the business as "the basis for the possibility of non[]renewal or suspension."

¶30 In short, the notices failed to provide Family Dollar with sufficient pertinent information, such that it could prepare and offer responses to the Licenses Committee at the hearings. We thus conclude that this was a violation of Family Dollar's due process rights. *See **Marris***, 176 Wis. 2d at 24.

¶31 Turning to Family Dollar's other due process claim—that it did not receive a fair and impartial hearing—we find the ***Marris*** case particularly instructive. Like the zoning decision at issue in ***Marris***, licensing decisions "implicate important private and public interests; they significantly affect … property ownership rights as well as community interests[.]" *See **id.*** at 25.

¶32 Recognizing that the decisions of municipal boards are vulnerable to "problems of bias and conflicts of interest" due to the "localized nature of the decisions," and that such biases may "distort judgment," our supreme court in ***Marris*** stated that matters before local boards require "impartial decision-makers" in order to "ensure both sound fact-finding and rational decision-making as well as to ensure public confidence in the decision-making process." ***Id.*** at 25-26. "Determining whether a board member has prejudged a matter requires an examination of the facts of the individual case." ***Id.*** at 26. For example, "[a] clear statement 'suggesting that a decision has already been reached, or prejudged, should suffice to invalidate a decision.'" ***Id.*** (citation omitted).

12

¶33 Here, the record clearly indicates that Alderman Bauman was not in favor of renewing Family Dollar's licenses; indeed, he said as much during his testimony at both hearings. Furthermore, it appears that Alderman Bauman, who was not a member of the Licenses Committee, was primarily questioning the witnesses during the hearings, rather than the witnesses being questioned by members of the Licenses Committee. Family Dollar asserts this was an inappropriate "delegat[ion] [of the Committee's] fact-finding responsibilities[.]" In fact, it was the refusal by the Committee to allow Family Dollar to cross-examine any witnesses at the first hearing—after Alderman Bauman's questioning—that led to the stipulation among the parties for a remand hearing.

¶34 Moreover, Alderman Bauman made comments at both hearings that suggest he may be biased against Family Dollar because it is a chain store. At the first hearing, he stated "this corporation could care less about this store and they would never know they lost this store." He echoed this sentiment at the second hearing, stating "Family Dollar could care less about how this store is operating," adding that he "is an advocate for the residents and businesses in his community." Alderman Bauman further noted that there was another store in the neighborhood which offers products similar to those offered at Family Dollar and had "fewer disturbances" than Family Dollar, which he believed was "due to local management."

¶35 These facts suggest that Alderman Bauman, who seems to have spearheaded these proceedings, had prejudged this matter. On the contrary, the City characterizes Alderman Bauman's conduct as "passionate advocacy on behalf of his constituents" with regard to a "problematic establishment in his district," which is "precisely the type of participation that is expected from local elected officials when matters [a]ffecting their constituents are at issue." However, not only does the City

fail to support this statement with any legal authority, it flies in the face of the legal standard for board decisions discussed in **Marris**. *See **id.*** at 25-26. Indeed, when "[t]aken together," Alderman Bauman's actions and statements have the capacity to "overcome the presumption of honesty and integrity that would ordinarily be applied" to the decisions of municipal boards by "creat[ing] a situation in which the risk of bias was impermissibly high." *See **id.*** at 29-30.

¶36 Therefore, we conclude that Family Dollar's due process rights were violated during the hearing process. *See **id.*** at 25-26. As a result, the City did not act according to law in making its determination not to renew Family Dollar's licenses. *See **id.*** at 24.

*Claim that Decision was Arbitrary, Oppressive, and Unreasonable*

¶37 Family Dollar also claims that the City's decision was arbitrary, oppressive, and unreasonable, representing its will and not its judgment. "'[A]n agency does not act in an arbitrary ... manner if it acts on a rational basis'; rather, '[a]rbitrary action is the result of an unconsidered, wil[l]ful or irrational choice, and not the result of the 'sifting and winnowing' process.'" ***Smith v. City of Milwaukee***, 2014 WI App 95, ¶21, 356 Wis. 2d 779, 854 N.W.2d 857 (citation omitted; alterations in ***Smith***).

¶38 As discussed above, the Licenses Committee's actions appear to have been driven by Alderman Bauman, whom we have concluded prejudged this matter. Thus, Alderman Bauman's role in directing the course of the hearings and the evidence received calls into question the reliability of the "sifting and winnowing" process here. *See **id.*** For instance, Family Dollar's previous nuisance designation had been lifted after it responded to the concerns noted in the MPD letter and made improvements in and around the store in accordance with its abatement plan, as

14

explained during the testimony of the Family Dollar managers. There had been no further citations issued at the store at the time of the hearings, and although there was testimony that the number of calls to MPD regarding the store were still "higher than one would expect," it was also noted and undisputed that the neighborhood in which the store is located is challenged by high crime rates.

¶39 Furthermore, the votes by the Common Council also suggest a decision based on its will rather than its judgment. The vote by the Council after the first hearing of the Licenses Committee was 9-6 in favor of nonrenewal. After the remand hearing, the vote by the Council was 13-0, with two abstentions. This difference in voting occurred even though the witnesses and evidence introduced during the two hearings were virtually identical. Moreover, both votes by the Council included Alderman Bauman's votes in favor of nonrenewal, when he had essentially acted as an advocate against Family Dollar throughout these proceedings.

¶40 Additionally, at the remand hearing, Family Dollar introduced examples of the Common Council's actions relating to other businesses' license issues between January 2019 and July 2020. Those examples indicated that nonrenewal was generally recommended for egregious conduct, such as a high number of health code violations being issued over a two-year period; the rejection of an applicant's nuisance abatement plan after it was deemed a chronic nuisance property after four shootings in a one-year period; pornographic videos being shot inside a premises; withholding customers' WIC benefits cards; and crimes such as physical assault, drug dealing, and illegal utility hook-ups being committed on the premises. In further contrast to the Family Dollar proceedings, in June 2020 the Licenses Committee initially recommended nonrenewal of a business's Food Dealer license based on testimony of "multiple shootings at the location, increased violence

in the neighborhood, and issues with unlicensed operators"; however, that business was later granted renewal with a sixty-day suspension.

¶41    The City's decision in this case also stands in stark contrast to its decision in *Questions*.  The fact set in *Questions* indicates that there were numerous police contacts with the night club which involved serious issues such as armed robbery and shots fired; it also included testimony from a neighbor who stated that bullets that had come through his living room and bedroom windows.  *See id.*, 336 Wis. 2d 654, ¶¶3-4.  Yet, the Common Council voted to renew its license with only a twenty-five day suspension.  *Id.*, ¶9.

¶42    Therefore, we conclude that based on the evidence set forth in the record, the City's decision not to renew Family Dollar's licenses was arbitrary, representing its will rather than its judgment.  As a result of this conclusion, as well as our conclusion that the City did not act according to law, we reverse the decision of the Common Council for the nonrenewal of Family Dollar's licenses.  *See **State ex rel. Lomax v. Leik***, 154 Wis. 2d 735, 741, 454 N.W.2d 18 (Ct. App. 1990) (on certiorari review, the reviewing court is generally "bound to either affirm or reverse," although it may remand "for limited purposes" such as supplementing an incomplete record).  Accordingly, we remand this matter to the circuit court with the direction to order the City to vacate its decision not to renew Family Dollar's licenses.

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.